## WILLIAM F. W. OWEN *vs.* JAMES BOYLE.

A printed volume of the laws of a *British* Province, proved by witnesses to have received the sanction of the executive and judicial officers of the Province, as containing its laws, is admissible in evidence in a case where the title to land, situated within that province, is in question.

The unwritten or common law of a foreign country or province must be proved as a fact.

The Court cannot presume without evidence, that the common law of *England* is also the common law of her colonies.

Nor can the Court presume, that all property upon the land, however circumstanced, is liable to distress for rent in arrear, as there are many and important exceptions made in favor of trade and commerce.

A mere certificate that a certain fact appears of record, without the production of an authenticated copy of the record, is not evidence of the existence of the fact.

REPLEVIN for six hundred bushels of salt, which the defendant in his brief statement alleged to be his property. The salt had been placed in a store on the island of *Campo Bello* in the Province of *New-Brunswick*, but for what purpose it was placed there did not appear. The facts necessary for a proper understanding of the case, will be found in the opinion of the Court. The admission of the title deed of the plaintiff was objected to, but admitted by the Judge. The certificate offered, to prove the appointment of the constable, was as follows. " *Charlotte* to wit. I hereby certify unto all whom it may concern, that *James M. Parker* was duly appointed at the General Sessions of the Peace, holden at *Saint Andrews*, in and for the county of *Charlotte*, on the second *Tuesday* in *April*, one thousand eight hundred and thirty-five, one of the constables for the parish of *Campo Bello* in the said county, as it appears from a record of the same, remaining on file in the office of the clerk of the peace of said county. Dated this 21st *June*, 1836. *H. Hatch*, clerk of the peace for the county of *Charlotte*, Province of *New-Brunswick*." The warrant of distress, signed by the plaintiff for himself, and as attorney of other owners, was as follows. " To *Isaac B. Mather*, our Bailiff, *Greeting*. Distrain the goods and chattels of *William McLane*, on the premises in his possession, situate in the parish of *Campo Bello*,

for fifty-six pounds and fifteen shillings, being rent due to us for the same, at the first day of *May* last, and for your so doing, this shall be your sufficient warrant and authority. Dated the twenty-first day of *September*, in the year of our Lord, one thousand eight hundred and thirty-five." The certificate was objected to by the counsel for the defendant, but admitted by EMERY J. presiding at the trial. The defendant's counsel objected also to the admission of the volume of Province statutes, but it was admitted by the Judge. The counsel for the defendant also contended, that the plaintiff had no right to distrain for rent, unless there was some contract stipulating the amount of rent which should be paid, and fixing the rent at some certain sum per year, or *pro rata*, for a less time; also that some law authorizing the appointment of a constable should be shown. The Judge ruled them to be unnecessary. The counsel for the defendant requested the Judge to charge the jury, that if they believed the store in which the salt was deposited was built for and used as a warehouse, or place for the deposit or storage of goods, the plaintiff had no right to distrain the salt deposited there for rent arrear. This instruction the Judge declined to give. The verdict was for the plaintiff, and was to be set aside, if the rulings of the Judge were erroneous.

*F. Allen & Hobbs*, argued for the defendant, supporting the objections made at the trial, and citing 2 *Stark. Ev.* 568; *Story's Con. of Laws*, 34, 232, 253, 529; 2 *Black. Com.* 41; *Phil. Ev.* 343; 1 *Johns. R.* 94; 14 *John. R.* 338; 3 *Johns. R.* 263; 7 *Johns. R.* 117.

*Mellen & S. S. Rawson*, argued for the plaintiff, and cited *Story's Con. of Laws*, § 444, 445, 641; 2 *Cranch*, 237; 2 *Stark. Ev.* 366; *Raynham* v. *Canton*, 3 *Pick.* 293; *Bailey* v. *Foster*, 9 *Pick.* 139; 1 *Dallas*, 462; 4 *Cranch*, 388; 6 *Binney*, 327; 2 *Hayw.* 173; 1 *Peter's Cir. R.* 225; *Bucknam* v. *Ruggles*, 15 *Mass. R.* 180.

After a continuance, for advisement, the opinion of the Court was drawn up by

SHEPLEY J. — The defendant was the owner of the property replevied, and still is the owner unless the right of property has been changed by the proceedings in the Province of *New-Bruns-*

*wick.* He has a right to insist, that the plaintiff shall show, that by the laws and proceedings there, he acquired a right to the property. Yet if such facts are shown, and the laws applicable to them, as prove a change of property there, the defendant when he voluntarily places his property under the protection or control of foreign laws, cannot justly complain, that by their operation his property is taken from him without any compensation, to pay the debts of another. The plaintiff claims as the purchaser of the property at an auction sale, alleging that it had been lawfully seized under a warrant of distress, for the payment of the rent of a store on the island of *Campo Bello*, in the county of *Charlotte*, due from *William McLane* to him. To prove, that he was the owner of the estate occupied by *McLane*, the plaintiff read a deed of indenture between himself and others bearing date on the 16th day of *April*, 1835, which was objected to, as not legally proved. The proof was made by the testimony of the subscribing witnesses before the Lord Mayor of *London*, and is by him certified under his official signature and seal of office. Such an authentication would be sufficient to authorize the deed to be read as evidence of title, by the laws of that Province, if they are properly proved in the case. And as the estate is situated in that Province, if it is sufficient to pass the title there, it should be so regarded here.

Were the written or statute laws of that Province legally proved and admitted? The general rule is, that foreign laws are to be proved as a matter of fact ; and the mode of proof of the written law is to be, by the production of a duly authenticated copy. An exception to the rule respecting the mode of proof, has been allowed in the courts of the *United States* and in those of several of the States, by receiving the printed volumes of the laws of the States of the Union, as *prima facie* evidence. But in the 3 *Pick.* 293, the court say, that they " do not mean to decide, that the law of any country merely foreign may be so proved." Another exception may be said to be established by the case of *Talbot* v. *Seeman*, 1 *Cranch*, 38, allowing foreign laws, which have been promulgated as such by our own government, to be read without other proof. The only case at common law, noticed, allowing a printed volume to be read as evidence of a foreign law, is the case of *Lacon* v. *Higgins*, 3 *Stark. R.* 178. In that case the French vice consul,

being called as a witness, produced a book which he stated, contained the French code of laws upon which he acted at his office; that there was an office called the royal printing office, where the laws were printed by the authority of the French government; the book purported to have been printed at that office; and the witness stated, that the book would have been acted upon in any of the French courts. Upon this testimony *C. J. Abbott* admitted the book to be read as proof of the law, and seemed to rely upon the case of the *King* v. *Picton*, 30 *Howell's State Trials*, 514. In this latter case the objection to the book of *Spanish Laws* is said to have been waived.

In the present case the books admitted purported to contain the laws of the Province, and to have been printed by the printer to his Majesty, and it was proved, that the laws thus printed, were distributed by the government to its officers, and that they had been cited and read in the courts there as laws in force, and as regulating the administration of justice. These books have received the sanction of the executive and judicial officers of the Province as containing its laws; and this is proved upon the oath of witnesses. It is difficult to say, that it is not as satisfactory to the mind as the exemplification of a roll found in the possession of the *custos rotulorum* would be, accompanied by the oath of the person making it. It can hardly be said to be a departure from the rule requiring the best evidence; because the present proof does afford evidence, that, if these books were offered in the courts of the Province where the estate is situated, the laws, which they contain, would be allowed to operate upon that estate. And this is the very object to be attained; to allow them the same efficiency, which they would have where the estate is situated. And that is all, that can reasonably be required, where the *lex rei sitae* governs the case.

The laws being admitted, what is their influence upon the case? They authorize the deed to be read, which proves the title of the plaintiff. They also prove the mode of proceeding "when any goods or chattels shall be distrained for any rent reserved and due upon any demise, lease, or contract whatsoever." *Province Laws*, 50 *Geo.* 3, *c.* 21, § 4. And the seventh section provides, that the distress shall not be deemed unlawful for any irregularity in the proceedings. But the laws do not provide when a distress for rent

Owen *v.* Boyle.

may be lawfully made, or what, or whose, property may be law-fully taken. Nor is there any proof introduced into the case, in any mode to ascertain these most important matters. It is said in argument, that the common law of *England* prevails in that Pro-vince. But can that be assumed by this Court without any proof? The unwritten foreign law is to be proved as a fact; and the *Eng-lish* courts will not presume, that the law of *Scotland* agrees with that of *England* upon any particular point. 2 *Stark. Ev.* 331. It is true, that *C. J. Abbott* held, in *Brown* v. *Gracey, Dow. & Ry. N. P. Cases*, 38, that where the defendant would set up a defence to a promissory note by the laws of *Scotland*, not apparent by the laws of *England*, he must shew it; but such a rule cannot be applied in this case, because the plaintiff is obliged to prove his right to distrain the defendants' property as a part of his title, which it is incumbent upon him to make out. *Starkie* says, the statement of text writers may be admitted to prove, whether the law of the mother country be the law of the colony. 1 *Stark. Ev.* 249; but still the proof must be introduced by the exhibition of such text writers.

The usual course is to make the proof by competent witnesses learned in those laws. *Story's Con. of Laws*, c. 17, § 642. *Blackstone* says, it has been held, that if an uninhabited country be discovered and planted by *English* subjects, all the *English* laws then in being are immediately there in force; but this, he says, must be understood with many and great restrictions. And speak-ing of the *American* plantations generally, he says, " the common law of *England*, as such, has no allowance or authority there." 1 *Com.* 107. This language may be thought to need many restric-tions, as well as the doctrine commented upon by him; but it is sufficient to prove, that it would be quite rash for a court here to presume, that all the common law of *England* was in force in her colonies.

We are in the habit of taking notice of the common law of *England* without proof; not however because it is the common law of a foreign country, but because that common law has become a law to us, and we look to it without proof, as to our own law.

Nor can this be regarded as a technical difficulty, for it is very possible to conceive, when the plaintiff is required to establish by

proof, his right by the laws of the Province to take the defendant's property, as then situated, for the rent due from *McLane*, that this may prove to be a matter, entering vitally into the merits of the case. The statement of the report is, that the defendant had placed his property in that store, but under what circumstances, or for what purposes, does not appear.

There are many and important exceptions to the general law of distress, made in favor of trade and commerce. In a case in which the whole doctrine was much examined, it was decided, that goods of the principal in the hands of his factor were not liable to be distrained for the factor's rent. *Gilman* v. *Elton*, 3 *Brod. & Bing.* 75. For like reasons, *it* has been held, that property deposited by a broker, in a warehouse upon a wharf for safe custody, to wait an opportunity to sell, was not liable to be distrained for rent due from the wharfinger. *Thompson* v. *Mashitee*, 1 *Bing.* 283. And the same rule of exemption has been decided to apply to goods in a common warehouse. *Mathias* v. *Mesnard*, 2 *C. & P.* 353. This is not the proper occasion to examine into the extent of the exemption in favor of trade and commerce further, than to shew, that it may be important to a just decision of the rights of these parties, that the law should be proved by those, who are competent to speak with a full knowledge of it. It is said, however, that the title of the plaintiff cannot be drawn into question for want of proof of the legal right to distrain. As that matter, although argued at the bar, does not properly arise out of the report, the decision is not placed upon it.

The certificate of the appointment of the constable was objected to. It does not purport to be an attested copy of the record, while it states the existence of one. A record or public document is made evidence in such a case, by the production of a copy proved by the oath of the person comparing it; or by an office copy attested and duly authenticated. The certificate cannot be regarded as legal evidence. 1 *Stark. Ev.* 188, 191, *Metcalf's Ed.*

*Verdict set aside and new trial granted.*