INHABITANTS OF JAY *versus* INHABITANTS OF EAST LIVERMORE.

A certificate under the hand of the clerk and the seal of this Court, stating substantially that, at a term named, "a divorce from the bonds of matrimony was duly decreed between" certain persons named, "as will more fully appear by the record," &c., is not admissible evidence of any fact therein stated.

Neither is a paper signed and sealed in like manner, and certified to be a "true extract from the record."

In an action between towns for the recovery of the value of certain pauper supplies, wherein an alleged divorce of one of the paupers from his former

Jay v. East Livermore.

wife becomes a material question at issue, the judgment of divorce rendered by this Court twelve years previously, but shown not to have been extended upon the records, may be proved by a certified copy of the docket entry of the libel and the clerk's memoranda of the action of the Court thereon.

What evidence is sufficient in such case to legally establish such judgment.

In such case, it is not necessary to show, by direct proof, that the allegations in the libel brought the case within the jurisdiction of this Court.

Nor to show that the libellee was defaulted.

From the docket entry " notice proved," this Court will assume that legal notice was ordered and given.

The identity of the parties to the libel may be proved by parol evidence.

On Facts agreed.

Assumpsit, for supplies furnished to Nathaniel Blackwell, his *de facto* wife, Lois G. Blackwell, and their three children, named, whose settlement was alleged to be in the defendant town.

The overseers of the poor of the plaintiff town gave seasonable notice to the overseers of the poor of the defendant town, that the five persons named had become chargeable, that their settlement was in the defendant town, and requested them to pay the value of the supplies furnished and remove the paupers.   The overseers of the poor of the defendant town seasonably denied that the alleged wife and her three children had their lawful settlement in their town, but made no denial that Nath'l Blackwell had his lawful settlement there.   It was agreed that the supplies were necessary and that they were furnished.   And, if the full Court should find that all the paupers named had their lawful settlement in the defendant town, the plaintiff town was to have judgment for the sum of $95,18, with interest, from the date of the writ.

The plaintiffs admitted that Nathaniel Blackwell was lawfully married to one Nancy Hannaford, May 18, 1845, and that the said Nancy was still living at the time of the trial; but claimed that a divorce of the bonds of matrimony between those persons was decreed at the March term, 1856, of this Court, in Oxford county, which the defendants denied.

In order to prove the alleged divorce, the plaintiffs offered papers A, B, D and E, (the material parts of which appear in the opinion,) to which the defendants objected as in themselves illegal evidence and insufficient to prove a legal divorce.

It was also admitted that a marriage was solemnized between Nathaniel Blackwell and Lois G. West, one of the paupers, by a person duly authorized, July 26, 1858, and that the same was a legal marriage, provided Nath'l Blackwell had been divorced from his former wife Nancy; and that, subsequent to July 26, 1858, Nathaniel and Lois lived and cohabited together, as husband and wife, and that Lois became the mother of the three children named.

*S. Belcher*, for the plaintiffs.

*J. C. Woodman*, for the defendants, elaborately argued the following points.

1. Doc. A, is not a certified copy and is inadmissible.

2. Doc. D, is equivalent to no record. No residence given to the parties, nothing to identify them, and shows no judgment.

3. Doc. E, purports to be " copy of docket," and shows on its face that the case is recorded in volume 5, page 44, and hence the docket is superseded.

4. B, is inadmissible, not being a copy but an extract.

5. No evidence that there ever was a libel, or that it was signed by the libellant, or that the allegations were according to the statute, or that it was ever filed, or that either of the parties to it resided in Oxford county.

6. If libel not filed within three months, no judgment can be entered except on petition, as in writs. 37 Maine, 579.

7. If libel was filed and lost, then contents should be proved by parol. *Gore* v. *Elwell*, 22 Maine, 444.

8. No evidence of legal notice.

9. No default. R. S., 1841, c. 115, § 2.

10. That *Leathers* v. *Cooley*, 49 Maine, 344, is not good law.

KENT, J. — The single question before us is whether the present *de facto* wife of Nathaniel Blackwell and their three children acquired a settlement in East Livermore, by virtue of the admitted settlement of Nathaniel in that town. That depends upon the decision of the question, whether there was a legal marriage between the parties above named — and that depends upon the question, whether he was competent to contract and enter into a marriage at the time it was solemnized — and that depends upon the determination of the question, whether he had been divorced from a former wife, who is still living. The only matter in dispute relates to the last question. If a divorce had been decreed before the second marriage, " either of the parties might lawfully marry again." Stat. 1858, c. 45. The second marriage was after this Act went into effect. The case is submitted to the Court to determine, upon the facts agreed and the evidence reported, the whole case.

It is incumbent upon the plaintiffs to satisfy us, by legal and sufficient evidence, that a divorce was decreed by a competent tribunal, by which the bonds of matrimony were severed and the husband put into a marriageable condition.

To prove this, they introduce several papers. The first, (marked A,) is a certificate signed by the clerk of this Court, stating in substance that a divorce was decreed by the Court, at a term named, " as will more fully appear by the record of the proceedings in this office." It is objected that this is a mere statement by the clerk of what he thinks is contained in the records and papers of the Court. It does not purport to be a copy of any record or docket, or paper. An official certificate of what is contained in a record, docket, deed or other instrument, is not admissible in evidence, unless made so by statute. The paper (A,) therefore, is not admissible as proof of any fact therein stated, and is out of the case. *McGuire* v. *Sayward*, 22 Maine, 233; *Green* v. *Durfee*, 6 Cush., 363; *English* v. *Sprague*, 33 Maine, 441; *Oakes* v. *Hill*, 14 Pick., 448.

It is objected by the defendants, that paper B is not ad-

missible as evidence of what is contained on the docket, because the clerk only certifies that it is a true extract from the docket, and not a true copy of all on the docket relating to the case.   We think this objection also is well taken.   A clerk, or other certifying officer must not make extracts, unless by consent, but must copy and certify the whole record or instrument.   We therefore lay this certificate and extract out of the case.

The paper (E) is a duly certified copy of the docket of this Court, held in the county of Oxford, March term, 1856, by a Justice named.   That copy is as follows:—

"No. 464.   NANCY BLACKWELL, *Libellant, versus* NATH'L BLACKWELL.   (Counsel's name.)

"Notice proved, 9th day.   Divorce decreed.   $50 worth of property decreed to the wife, and custody of David E. Blackwell, as prayed for in the libel.   [Recorded vol. 5, page 44]"

Then follows, as part of the docket, the entry of the general order on the 11th day of the term, that judgment be entered up in all cases where a final decision has been had.

The paper D is then produced, which is certified as a true copy of record, and must be from the book in which the extended records are kept, otherwise it could not properly be certified as a record distinct from the docket.   The heading is the same as to the term, and then follows the declaration, that,—"In the following actions, papers not filed." "Nancy Blackwell, *Libellant*, v. Nathaniel Blackwell."

Then follows the record of the same general order as to judgments, as on the docket.   This record is attested by the then clerk, as was the docket.

Although there is no formal certificate that this record is the 5th volume on page 44, as indicated in brackets on the docket, yet we cannot hesitate to regard it as the record there referred to—no other being produced or alleged to exist by either party.

These papers, (D & E,) present in substance a case, where the suit has been disposed of on the docket, which shows the

action of the Court, but has never been otherwise recorded *in extenso*, than is shown by paper D, because the papers have never yet been filed.

The question is whether the Court can find on this docket and record enough to satisfy them legally that a divorce was granted. How far is the docket and its entries evidence of the doings of the Court?

It will be observed that this is not a question arising in a suit on a judgment, or in a controversy between the parties thereto, or in which either of the parties to the divorce is before the Court, as plaintiff or defendant. It is a case where the question arises incidentally — and, as a matter of evidence offered to establish a fact, which becomes important in determining the legal rights of third parties.

The first question is how far the docket entries are evidence of what the Court has decreed or adjudged, and, secondly, if they can be thus used, how long can they thus remain as evidence.

There seems to be a perfect agreement, in all the cases in this State and in Massachusetts, that the docket is sufficient evidence of the doings and judgments of the Court, and may be used in evidence, for a time at least. The question is when these entries cease to be evidence? Are they such only until a sufficient time has elapsed to enable the clerk to extend the record, or are they to remain as the evidence of what the Court has done, until the extended record is made and certified.

In examining some of the cases bearing on the question, we may reverse the usual order and examine the latest case first, and then trace the rule back through the various cases relied upon. The case of *Central Bridge* v. *City of Lowell*, 15 Gray, 122, was decided in 1860, but the volume in which it is contained has been issued since the argument in this case. In that case certain dockets of judgments in suits at law and equity between the parties were admitted by the Judge at the trial. C. J. SHAW, in answer to the exceptions taken to that ruling, says, — we think "that the ad-

mission of dockets of judgments, it not appearing that judgments had been entered *in extenso* in books of record, was also correct." It appears, by a note of the reporter, that "the respondents contended that the only competent evidence of other suits was a duly certified copy of the record."

It will be observed that the decision is placed on the ground that it was not shown that there had been any extension of the judgments on books of record. And further, that it does not appear that there was any exhibition of or proof in relation to the existence of the original writs or bills — or of any document or paper, in any of the cases. The docket entries alone were admitted as evidence of the judgments given, and were regarded as sufficient proof of the facts therein stated.

The case of *Benedict* v. *Cutting*, 13 Met., 181, was where a recognizance, on which an action was brought, had never been extended on the record. The Court say, — "It is not necessary that matters should be entered at large on the books of the Court to be a record. The docket and files constitute the record, until it can be made up in form by the proper recording officer."

The case of *Reed* v. *Sutton*, 2 Cush., 115, resembles in many features the case at bar. In that case, the validity of a sale of an equity of redemption depended upon proof of a judgment against the original debtor. The case was between third parties. The docket entries were offered as proof of such judgment. They were the usual brief notes of the amount of damages and cost, with the addition of "judgment by agreement." No default was minuted. An entry of "Cont., *ex re*," which was first entered, was stricken out, an appearance for defendant having been entered. It appeared also, by the books in clerk's office, purporting to be the records, or part thereof, for the same term, that the case was there extended in usual form, but it did not appear that this record was in the handwriting of the then clerk, (who deceased before the entry of the action,) and it appeared that the supposed record had never been examined

and certified by that clerk. The deposition of the presiding Judge and the affidavit of the clerk, given in another case, were offered, but not deemed admissible as controlling or qualifying the docket entries. The supposed record was laid out of the case, and the case stood upon the docket entries alone. No statement of any offer or examination of the original writ or papers appears in the report. SHAW, C. J., in delivering the opinion of the Court, says, — " The docket is the record, until the record is fully extended, and the same rules of presumed verity apply to it as to the record. Every entry is a statement of the act of the Court, and must be presumed to be made by its direction." The judgment of the Court was held as sufficiently proved by the docket entries.

In *Davidson* v. *Slocomb*, 18 Pick., 464, it was held that the minutes of a justice of the peace, " although not technically a record, contain all the material parts which the record would comprise if it were made up at large and in the usual form, and as the record has not been thus extended in form in consequence of the death of the justice, the minutes are to be regarded as substantially a record of the proceedings, and are entitled to the same credit as a record at large would be if it had been thus made up. The minutes of the journals of the House of Lords are held to be records, and a copy of these admissible in evidence. *Jones* v. *Randall*, Cowp. 17; Bac. Abr., Evidence, F."

The Court in Massachusetts has gone still further and held that where no record and no docket entries are shown, yet the docket entries may be proved by parol, where there is evidence actual or presumed of a loss. The case of *Pruden* v. *Allen*, 23 Pick., 187, was, perhaps, the first in the series as to the Court docket, and, in that, the Court held that it had proof enough from extraneous sources to permit the Court to find that there was once a docket, although none was found, and no extended record, and no petition for license, and no papers of any kind, and that the lost docket did contain a minute of the granting of a license to

an administrator to sell real estate, and the title under such sale was sustained. The Court say, "that the clerk intrusted with the duty of keeping records, must, of necessity, take down the doings of the Court in short and brief notes, from which a full, extended and intelligible record is afterwards to be made up. But, until they can be made up, these short notes must stand as the record." If the docket is lost, the contents may be proved as other lost documents may be.

*Tillotson* v. *Warner*, 3 Gray, 574, holds the same doctrine as to proof of lost minutes, and adds that, " it was not necessary that the minutes should have been extended so as to form a full and complete record."

In *Sayles* v. *Briggs*, 4 Met., 421, it was held that when the evidence is distinct, that no record and no minutes or docket entry of any kind was made, parol evidence cannot be admitted to supply it. Mr. Justice HUBBARD says,— " And the cases are abundant to show that a lost record, like a lost deed, may be proved by parol; and that the minutes may be introduced where the record has not been drawn out in *extenso*, as containing the elements of the record, and, in truth, for the time being, the record itself." 2 Saund. Pl. & Ev., 661. He then adds these forcible words : — " If this were not the rule, substantial injustice might be done to innocent parties who had no duty to perform in making up the records, and were not charged with the care of their preservation."

In our own Court, there have been several decisions on the questions here involved. The case of *Longley* v. *Vose*, 27 Maine, 179, recognizes the soundness of the doctrines set forth in the Massachusetts cases, and sustains the view that the docket entries are to stand as the record until more fully extended. SHEPLEY, J., in supporting this view, says, —"the Court can as well be informed of the substance of the record by the minutes as by the record made up from them under its direction. When proof of the existence of a record is to be made before the same Court, that arising

from the minutes of the clerk, properly made, may be nearly if not quite as satisfactory as that derived from an extended and completed record."

The Court also held, that where the short minute on the docket was only that the defendant "recognizes in $100"— "the Court in which it was made would be informed that he had entered into such a recognizance as the law then required, in the sum of $100, to be extended according to the usual form and course of proceeding in that Court, and such a record would accordingly be considered as *proved* by the minute of the deceased clerk, until a more extended and perfect one could be made."

In that case, it was objected that, in the record as made up, the recognizance was stated to be "to prosecute the appeal with effect," and that that was not the one required by the existing law. The Court say,—"If the clerk misapprehended the law and erroneously made use of the word "effect," such an error in the record of the action would not affect a record of the recognizance as proved by the minutes. The latter would be the true record of it, the former but a *reference* to it, stating, it may be, its contents in one particular erroneously." This would seem to make the docket entries the true record, and, to determine that, those entries might override the extended record, even before any amendment made in it.

In the same volume, (27 Maine,) *Chamberlain* v. *Sands*, 467, it was held that the minutes of examining magistrates, who were bound to make up a record, might be used in evidence, in accordance with decided cases, "before such formal record had been made."

The case of *Leathers* v. *Cooley*, 49 Maine, 337, is a very strong, if not entirely conclusive authority in favor of the plaintiff.

It was an action on a recognizance, to prosecute an appeal and to pay costs recovered. It became necessary to establish the fact of the existence and rendition of a judgment. The only evidence offered were the docket entries

in another court. It appears that no extended record had been made, because no papers had been filed, either the writ or other papers. All rested on the docket entries. The Court say, in the opinion of the majority, — " The rule is now well established that the docket is the record, until the record is fully extended and the same rules of presumed verity apply to it as to the record. * * The entries upon the docket sufficiently show that the judgment had been entered up before this suit was brought."

Indeed, the learned counsel for the defendants seems to admit that this case is a full authority against his main propositions, and that " the less that is said about it the better." This may be a very convenient, as it certainly is a very summary mode of disposing of an adverse decision. We might have rested, so far as a direct authority in our own Court is concerned, upon this case, as one not overruled. But we have deemed it proper and expedient, after the very earnest attempt of counsel to overthrow it, to examine the authorities, to see if it was so entirely unsupported as is contended in the argument.

The counsel objects on various grounds to the admission of the docket entries as evidence of the fact of a divorce, and insists that the party offering it should produce, at least, the libel and other papers from which the record could be extended. But the plaintiffs are no parties to the record, and are not presumed to have in their possession the libel and papers. They are in no fault, if any one is, that the record has not yet been extended. The counsel seems to assume that it is impossible that the record should ever be made up more fully. But *non constat* that it may not now be extended. We see that in New Hampshire the record is never extended, except in very particular cases, unless a party to it desires a copy to sustain a suit upon it, or for some new use. And this is often made up twenty or thirty years after the rendition of the judgment. Until such extension, everything rests upon the docket entries. *Willard* v. *Harvey,* 24 N. H., (4 Foster,) 344.

The exact fact in this case is, that the record had not been extended at the hearing. The authorities hold the docket entries may be used, certainly by third parties, until this is done. The reason is obvious. The docket showing that a judgment or decree was entered at a particular term, is confessedly evidence of the fact for a time. Suppose that the parties in the case of divorce should both contract a new marriage, as they might legally, the day after the adjournment of the Court, and the entering up of judgments of the term, and, of course, before any extension of the record. If, thereupon, they had been arrested for the crime of adultery, and, if the attorney had destroyed the libel, or refused to produce it, or to furnish any papers, and the clerk declined to extend the record without the original, must they be convicted notwithstanding the docket record?

The legal settlement in this case depends upon the fact of divorce. If there ever was, for a day, a divorce, that fact is sufficient for the plaintiffs, unless there had been a judicial revocation. Can any one doubt that there was, and that it was proveable by the docket entry, for a time long enough for the record to be extended in the usual course? This is admitted. If, then, the record was enough to establish the fact of divorce, as once existing, no subsequent neglect of an attorney or the clerk could restore the parties to the married state and deprive them of their legal rights as divorced parties.

The cases of divorce are distinguishable from the ordinary judicial controversies. The public have an interest in them. Morality and domestic relations, and public policy and the peace of society, all claim a share in the effect to be given to divorces. New rights are conferred on the parties, and new married relations may be lawful, which, but for the legal efficacy of the divorce, would be adulterous and criminal. Our statute has therefore refused a right in the Court to grant a new trial or review, where either of the parties has contracted a new marriage. The decree is absolute, and, however strong the reasons may be, there can,

in such a case, be no opening of the case anew. This feature distinguishes divorces from the common cases between party and party. The reason for the distinction is obviously one resting upon considerations of public policy and domestic harmony, giving to the decree an unusual conclusiveness.

The counsel for the defendants insists that the Court cannot regard the docket entries as a sufficient record, because the original libel is not produced and exhibited to the Court, to show that it contained averments sufficient to give the Court jurisdiction, and that it was signed, &c.

Now, in none of the cases cited, has this been required. These plaintiffs never had any possession of that paper. They rest upon the docket as the record, until a full record is made. If a third party cannot avail himself of such entry, without producing all the original papers, in most, if not all cases, the party would be remediless.

What does the docket show? It shows that Nancy Blackwell entered a case, as libellant, against Nath'l Blackwell. It shows it was heard on a libel, for it gives the custody of the child, " as prayed for in the libel." It shows that notice was proved, and that the divorce was decreed, and that a certain amount of property was decreed to the wife.

In the quotation from the opinion in *Longley* v. *Vose*, it will be observed that the Court held that, from the short minute on the docket, that defendant " recognizes in $100," the Court would be informed that he had entered into such recognizance as the law then required.

In the case before us, we are informed that a libel was entered, acted upon after proof of notice, and a decree of divorce made, and also a decree of allowance and one relating to the custody of the child.

But, it is said, that the docket does not show that the Court had jurisdiction. But the proceedings were in this Court, which is the highest Court, and not of limited jurisdiction. We are not to assume, that it had no jurisdiction, but, on the contrary, when it appears that it has acted on a subject confessedly within its jurisdiction, we are not re-

quired to demand direct proof that the case was brought by
the allegations or terms of the libel within the powers and
jurisdiction of the Court.   The Legislature has seen fit to
give to this Court an almost unlimited power to grant di-
vorces.   This authority is only limited by the requirement
that, in the judgment of the Justice presiding, the granting
of the divorce would be "reasonable and proper, conducive
to domestic harmony," &c.

By reference to the various cases in the reports, it does
not appear that in any of them the decision was made on
the ground that the original writs were or were not pro-
duced.

It is also objected, that it does not appear that the de-
fendant was defaulted.   But a divorce is never decreed on
a default alone.   The Court always requires proof of the
allegations, and the default, if one is entered, has really no
effect on the judgment, and is immaterial.

The identity of the party, with the pauper, it is said, has
not been and cannot be established.   But, is there any more
difficulty in identifying, under the docket entries, than there
would be if the record had been fully extended?   The same
question might then be made as is here made.   A fully ex-
tended judgment for or against "John Smith" might require
evidence to fix it upon a particular individual of that name.
It is the constant and well established practice to admit
parol testimony to identify persons or property named in a
deed or record.   *Dane* v. *Gilmore,* 49 Maine, 179.

It is urged that the mode and character of the notice,
named on the docket, does not appear.   But when a record
states that notice was given and proved, we may safely as-
sume that it was a legal notice.   Even extended records do
not show how the notice to a defendant was given, or even
refer to the return of an officer on the writ.   If the Court,
in *Longley* v. *Vose,* could understand that a party had given
a legal recognizance, in the usual and required form, from
the docket entry of "recognized in $100," we may be en-

tirely safe in understanding, from the words "notice proved," that due and legal notice had been given.

On the whole, after a full examination of the case as presented to us, we are of opinion that the legal evidence is sufficient to prove the divorce, and therefore, according to the agreement of the parties, there must be

*Judgment for the plaintiffs for $95,18,*
*with interest from date of the writ.*

WALTON, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.