Arthur J. STEEVES

v.

Carl W. IRWIN, M.D.

Supreme Judicial Court of Maine.

Sept. 15, 1967.

Neil D. MacKerron, Esq., Bridgton, for appellant.

Robert W. O'Connor, Augusta, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and DUFRESNE, JJ.

DUFRESNE, Justice.

Judgment for the defendant against the plaintiff was entered on August 2, 1965. This entry followed prior decree of a Justice of the Superior Court granting defendant's motion for summary judgment. The plaintiff appeals.

The parties agree that the plaintiff on or about October 11, 1961, while employed by the Great Northern Paper Company at Millinocket, Maine, sustained personal injuries involving his back. On or about May 1, 1962, he was examined by the defendant neuro-surgeon, who then and thereafter subjected the plaintiff to x-ray, myelogram and other neurological tests. The defendant's diagnosis of plaintiff's ailment was that the plaintiff suffered from a herniated or ruptured disc at the lumbosacral interspace, and/or at the lumbar four (4) and five (5) interspace. On surgical intervention May 23, 1962 the defendant found no herniation of disc or other abnormality other than arthritis of the lumbar vertebrae. He examined plaintiff again on June 26 and September 17, 1962, when on both occasions he advised return to moderate work.

The plaintiff sued the defendant doctor for malpractice basing his cause of action upon defendant's alleged negligent failure to find and discover herniation and abnormalities of the lumbar vertebrae other than arthritis and upon the doctor's continued negligent failure thereafter to correctly diagnose and properly render medical service or treatment to plaintiff on account of his ailment. The defendant in his answer denied any negligent conduct on his part. By motion to amend, however, he later sought to avoid plaintiff's action through the following supplemental affirmative defenses:

(Paragraph 10) "The plaintiff elected to receive the benefits of the Workmen's Compensation Act (Maine, R.S.1944, [sic] Chap. 31) and has received certain money benefits."

(Paragraph 11) "The plaintiff has failed to give notice to the employer or compensation carrier as is required by c. 31, sec. 25, Maine, R.S.1954 as amended."

Defendant's motion to amend was granted by the Court upon agreement of counsel, and the amendment was treated by all as made and allowed. The facts supporting

these affirmative defenses served as the basis for the Court's favorable action upon defendant's motion for summary judgment.

When the defendant pleaded affirmatively plaintiff's election to accept and his actual receipt of benefits under the Workmen's Compensation Act as a bar to the instant action in malpractice as well as plaintiff's failure to make written demand upon his employer or compensation carrier to pursue remedial action against the defendant as third party at least 30 days prior to the institution of the present suit, such defenses became issues in the case and were subject to proof at trial without further traverse on the plaintiff's part. The issues in that posture of the case were fully joined without further replication, so-called as "[n]o other pleading shall be allowed, except that the court may order a reply to an answer", which was not done in the instant case. Rule .7 (a) M.R.C.P.

However, if the defendant believed that his affirmative defenses were based on facts which if admitted to be true would be dispositive of the pending action as a matter of law, he could under Rule 56 M.R.C.P. prior to trial attempt to establish the truth of those facts by motion for summary judgment supported by affidavit verifying such facts. Such is a proper way to explore the existence of controverted issues of fact and when such a motion is made with proper supportive affidavit as provided under this rule, then the adverse party must respond by counter affidavit setting forth specific facts showing that there is a genuine issue for trial. Rule 56 (e) M.R.C.P. Indeed, if the adverse party does not respond with proper opposing affidavit, then summary judgment, if appropriate, shall be entered against him. This procedural tactic was pursued by the defendant.

But, in order to legally shore up his motion for summary judgment, defendant's affidavit should have complied with the requirements of Rule 56 (e) M.R.C.P. and been made on personal knowledge, setting forth facts admissible in evidence and showing affirmatively that the affiant was competent to testify to the matters stated. In the instant case, the defendant's supportive affidavit did not qualify under any one of the three stated requirements, let alone under all three of them. The affidavit did not state that it was made on personal knowledge and as proof of the facts asserted, it was all hearsay; defendant's attorney who was the affiant was not a competent witness to testify to the facts therein advanced. In an attempt to furnish the required affidavit, defendant's attorney supplied under oath a statement by himself concerning the records in the office of the Industrial Accident Commission regarding plaintiff's petition for award of compensation before said administrative body and he proceeded in narrative form to give the Court the Commission's decision thereon, his own analysis of the proceedings before the Commission made by him from the record and from the transcript of the evidence on file with the Commission, concluding a) "that the petition for award of compensation and lump-sum settlement of this claim pertained to the same and sole injury treated by Dr. Carl Irwin and this treatment is the basis of this complaint;" b) "that Arthur Steeves did not give notice to the Great Northern Paper Company, employer, or Employers Liability Insurance Corporation as is required by section 25, Maine R.S.1954, chapter 31 as amended."

A public record may be made evidentiary by the production of a copy supported by the oath of the person comparing it under common law practice or by a duly attested and authenticated copy, or by a document purporting to be an official publication thereof. See Owen v. Boyle, (1838) 15 Me. 147 at page 152. See also Rule 44 (a) (c) M.R.C.P. A mere certificate or affidavit by a magistrate, clerk, recording or certifying officer, or other witness knowledgeable of the record, stating the existence of the record and what it purports to show is never receivable as evidence, unless made so

by statute. What the record itself factually declares must be made known to the Court by a duly authenticated copy. The Court, before which it is produced, should be in the position to inspect the record and decide what it contains and proves. The construction of the record and its import must be left to the Court and not be entrusted to the certifying officer or witness. McGuire v. Sayward, (1842) 22 Me. 230; English v. Sprague, (1851) 33 Me. 440. See also Inhabitants of Jay v. Inhabitants of East Livermore, (1868) 56 Me. 107.

■ Defendant's affidavit alleging counsel's appraisal of the record before the Industrial Accident Commission and his conclusions therefrom did not contain evidentiary facts admissible at trial to which affiant-counsel could testify and as such legally failed as support for his motion for summary judgment. Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., C.A.2d, 1965, 353 F.2d 946.

"When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted." Sprague v. Vogt et al., (8th Cir., 1945), 150 F.2d 795; Doza v. American National Insurance Company, (8th Cir., 1963), 314 F.2d 230; Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, § 1237.

■ The defendant's affidavit must be disregarded for failure to comply with the rules and the defendant's motion for summary judgment would be denied for want of verified factual support if the plaintiff had not served a proper opposing affidavit or furnished other pleadings from which the defendant could receive aid and assistance. The defendant may obtain support for his motion for summary judgment from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any", and this includes any opposing affidavit or pleading filed by the plaintiff. Any concession of fact made by the opponent in his opposing affidavit or in any other pleading establishess the fact for all times and purposes between the parties, and such factual admission accrues to the benefit of the other party moving for summary judgment to the extent that it gives support to the same. See Lloyd v. Franklin Life Ins. Co., C.A. 9th Cir., 1957, 245 F.2d 896.

■ Plaintiff's counter affidavit by counsel representing him before the Industrial Accident Commission, even though made "according to the best of my recollection, information and belief," shows obviously that all pertinent parts thereof were made from personal knowledge of counsel-affiant and therefore is proper under the rule and will be considered. See Chambers v. United States, C.A. 8th Cir., 1966, 357 F.2d 224. Thus, the plaintiff admits in his said affidavit and in his motion to join his former employer as a third party defendant to the instant suit, that he did petition for an award of compensation before the Industrial Accident Commission respecting an injury concerning which the plaintiff submitted to a laminectomy at the hands of the defendant, and that he accepted a lump sum settlement award approved by the Commission in the case between the plaintiff and his employer, Great Northern Paper Company. The facts asserted by the plaintiff in his opposition to defendant's motion for summary judgment and supported by affidavit and the factual concessions made by him in his motion to join his employer as third party defendant, must be taken as true. State ex rel. Bond v. State, 1963, 62 Wash.2d 487, 383 P.2d 288, 291. Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, § 1235. Thus we must resolve the propriety of the Court's action granting defendant's motion for summary judgment in the light of the admitted facts as follows, to wit: on or about October 11, 1961 the plaintiff was injured while working for the Great Northern Paper Company in the course of his employment. He was treated and submitted to surgery performed

by the defendant. The defendant failed to find any evidence of herniated disc which in the instant case the plaintiff alleges as the basis for his action against the defendant for malpractice. On or about May 28, 1962, the plaintiff filed a petition for an award of compensation on account of said injury before the Industrial Accident Commission. One Richard Sanborn as claims adjuster for the employer's insurance carrier and James E. Mitchell, Esq., as attorney representing the employer, Great Northern Paper Company, and its insurance carrier had numerous conversations with plaintiff's then attorney concerning plaintiff's claim before the Commission. Mr. Mitchell authorized and requested negotiations to continue directly with Mr. Sanborn as representative of the employer and insurance carrier. Concerning the subrogation rights of the employer, Mr. Sanborn stated that "his company would have no part of bringing an action against said defendant, in any conceivable case, and especially in this one; and that said defendant was free from fault in the premises, and that no third party suit would lie in any event; and that plaintiff could proceed himself against the defendant if he wished to." On April 16, 1964 a lump sum settlement of the action under the Workmen's Compensation Act was approved by the Commission. No written notice was given by the plaintiff to the employer under R.S. 1954, c. 31, § 25 as amended.

Although not appearing of record, a "release" was given by the plaintiff to the employer, Great Northern Paper Company, and its insurance carrier for any and all claims in conjunction with and as part of the lump sum settlement agreement approved by the Commission, we are told by plaintiff in his brief, and we will assume such to be a fact in compliance with R.S. 1954, c. 31, § 28, which reads as follows:

"Upon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of said injury or death and be entitled to a duly executed release;

upon filing which, or other due proof of payment, the liability of such employer under any agreement, award or decree shall be discharged of record, and the employee accepting the lump sum settlement as aforesaid shall receive no further compensation or other benefits on account of said injury or death under the provisions of this act."

R.S. 1954, c. 31, § 25, as amended by P.L. 1961, c. 392, § 3 (now 39 M.R.S.A. § 68) provides in pertinent part as follows:

"When any injury or death for which compensation or medical benefits are payable under the provisions of this act shall have been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim such compensation and benefits or obtain damages from or proceed at law against such other person to recover damages. *Any employer having paid such compensation or benefits or having become liable therefor under any decree or approved agreement shall be subrogated to the rights of the injured employee to recover against that person.* * * *

*The failure of the employer or compensation insurer in interest to pursue his remedy against the third party within 30 days after written demand by a compensation beneficiary shall entitle such beneficiary or his representatives to enforce liability in his own name*, the accounting for the proceeds to be made on the basis provided." [Emphasis supplied.]

The statutory 30 days written demand as a prerequisite to a beneficiary's entitlement to recovery of damages in his own name against the third party has been made the threshold argument in support of the Superior Court's favorable ruling on the defendant's motion for summary judgment, the lower court adjudicating that the statutory 30 days demand could not be waived orally.

Since the injury from defendant's malpractice arose later in time than the initial happening when plaintiff sustained his original injury by accident arising out of and in the course of his employment for which he sought compensation before the Industrial Accident Commission, he now argues that the malpractice aggravation of his original injury was not the type for which he must under the statute elect either to claim compensation from his employer or proceed at law against the third party physician, within the statutory plan of subrogation of rights as provided therein. Even though the defendant physician could under no circumstances be held liable to pay damages accruing on account of the original injury prior to his own negligent conduct, the aggravation of the original injury due to the malpractice spelled the statutory occasion "[w]hen any injury * * * for which compensation or medical benefits are payable under the provisions of this act shall have been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto." In Mitchell v. Peaslee, 1948, 143 Me. 372, 63 A.2d 302, we said that aggravation through malpractice of an employee's injury is to be taken as a part of the original injury and included in the compensation to which the employee is entitled and that the employee's right of action against his physician for malpractice which aggravates an injury for which he has claimed and accepted compensation is within the purview of and governed by the provisions of the Workmen's Compensation Act hereinabove mentioned relating to actions against persons other than the employer liable for the employee's injury.

■ Section 25 of Revised Statutes, c. 31, as amended (now 39 M.R.S.A. § 68) is not confined to the original event of injury but includes all injury arising from circumstances of aggravation for which compensation may be had in the proceedings under the Workmen's Compensation Act.

We must therefore decide the issue whether the plaintiff's admitted failure to give his employer or compensation insurer the 30 days written demand for them to pursue their remedy against the defendant physician on account of the latter's alleged malpractice is a bar to the institution of the instant action by the plaintiff.

Conceding the truth of plaintiff's opposing affidavit spelling out facts constituting oral waiver by the employer and insurance carrier of their right to insist on the 30 days written demand to bring suit against the defendant as must be allowed in the posture of the case, is the defendant correct in his contention that the statutory written demand cannot be orally waived? We answer that such argument is not tenable.

■ In Foster v. Congress Square Hotel Company, 1929, 128 Me. 50 at 56, 145A, 400, 402, 67 A.L.R. 239, we stated: "Under the rules of construction just above stated, we do not hesitate to say that the inability of the injured person to obtain full damages [under the Workmen's Compensation Act], and the immunity of the tort-feasor, are among the evils which the Legislature intended to remedy by the amendment of 1921." Our Court there saw a legislative design to save the injured employee from loss of his common law action against the third party tortfeasor by employer procrastination in the enforcement of liability against such third party. By the 30 days written demand, the employee can force action or a statutory waiver if the demand is disregarded. Thus he can protect his rights against the running of the statute of limitations upon his claim, especially in cases where as in this instance of malpractice the limitation period is only two years. The statute must therefore be interpreted in the light of said legislative purpose for the benefit of the injured employee, if such can be done without impairment of the rights of the employer and insurance carrier for whose benefit statutory rights of subrogation have been created.

■ The statutory provision for subrogation may be waived by the employer and insurance carrier, and such waiver need

not be in writing in the absence of any statutory provision so requiring. Foster v. Congress Square Hotel Co., supra. The statute was never intended to grant immunity from suit to the third party tortfeasor, and his right to plead the statute as a defense in an action by the injured employee against him is available to him only as protection against a second suit by the employer or insurance carrier in the absence of waiver of their subrogation rights.

Such a waiver does not involve any benefit to third persons responsible for injuries to employees of assenting employers under the Workmen's Compensation Act, Denaco et al. v. Blanche, 1952, 148 Me. 120, at page 122, 90 A.2d 707, and it is immaterial to them whether the waiver of subrogation arises from the employer's or compensation insurer's failure to pursue their remedy against the third party tortfeasor within 30 days after written demand by the compensation beneficiary, the method provided by the statute, or said waiver is factually agreed upon between the subrogated employer or insurance carrier and the injured employee.

 The statutory subrogation in favor of the employer and compensation insurer merely suspends the right of the injured employee to proceed against the third party, there being no intention in the Legislature to destroy his cause of action. The employer's or insurer's right to bring suit ceases and that of the employee revives when subrogation rights have been waived, in the method prescribed by the statute or by agreement of the parties. Such construction of the statute is consistent with the underlying policy of the Legislature to enable the parties whose rights are regulated between themselves by the provisions of the Workmen's Compensation Act to seek full damages against the third party tortfeasor legally responsible for the employee's injury, and serves to prevent any unintended windfall of immunity to the wrongdoer. *Mitchell*, supra. *Foster*, supra.

 There was error in granting the motion for summary judgment in favor of the defendant on the grounds that the Workmen's Compensation Act did not permit the oral waiver of the employee's 30 days written demand to his employer to bring suit against the third party malpracticing physician.

The defendant, however, contends that the Superior Court's action was proper because the plaintiff, subsequent to the malpractice injury, accepted from his employer a lump sum agreed compromise settlement approved by the Industrial Accident Commission and gave his employer in connection therewith a general release of all claims.

 It appears from the arguments of counsel that payment by the employer and acceptance by the employee-plaintiff of a lump sum for the latter's injury reflected an agreed compromise settlement between the parties respecting the plaintiff's claim which the employer disputed, as the statute, R.S.1954, c. 31, § 28 (now 39 M.R.S.A. § 71) permitted. It was not a lump sum agreement in lieu of future weekly payments under a commission adjudication of employer liability. Nevertheless, the agreed sum was approved by the Industrial Accident Commission; it was an award of compensation under the Act and was received by the employee-plaintiff in full settlement of all compensation to which he may have been entitled against his employer. Melcher's Case, 125 Me. 426, 134 A. 542. As between the employer and employee, payment of such award was tantamount to satisfaction of a common law judgment and discharged the employer from all further liability on account of the employee's injury by force of the express terms of the statute and entitled the employer to a duly executed release. The statute further provides that in accepting the lump sum settlement the employee shall receive no further compensation or other benefits on account of his injury "under this Act", but nowhere does the Act bar relief to the injured employee against the third party malpracticing physician who in the instant case was not a party to any of the proceed-

ings before the Industrial Accident Commission and paid no part of the lump sum settlement award.

The defendant's contention of immunity from suit rests upon the ancient common law rule that a settlement with and release of all rights against one joint tortfeasor by the injured person, or satisfaction of judgment against one joint tortfeasor, operates as a release of, and a bar to an action against, all other tortfeasors including a physician or surgeon who by malpractice has aggravated the original injury. This rule received original sanction of this Court in cases of joint trespasses. Gilpatrick v. Hunter, 1844, 24 Me. 18, 41 Am.Dec. 370; Mitchell v. Libbey, 1851, 33 Me. 74. In Cleveland v. City of Bangor, 1895, 87 Me. 259, 32 A. 892, our Court extended the doctrine to tortfeasors "only severally liable for the same injury", but it added that the injured person under any circumstances was entitled to but one compensation. "In neither case, [said the Court], will anything short of satisfaction from one bar a suit against another".

■ Does the mere release of an original tortfeasor or obligor from liability or the mere satisfaction of a judgment against him without more result in the release of an attending doctor from liability for aggravation of the initial injury? We rule that such release or satisfaction of judgment does not immunize the physician or surgeon against a malpractice suit, unless the release of the original tortfeasor was actually intended to release the malpracticing doctor or the amount paid on the judgment or in consideration of the release constituted full compensation for the plaintiff's injuries inflicted both by the original tortfeasor and by the negligent doctor or that such payment was accepted as such.

■ It is true that our Court has adopted the common law rule that in an action for negligence causing bodily injury the negligence or lack of skill of a physician or surgeon, selected with reasonable care,

which aggravates or increases the injury is regarded as a consequence reasonably to be anticipated and a part of the injury for which the original wrongdoer is liable. Stover v. Inhabitants of Bluehill, 1863, 51 Me. 439; Hooper v. Bacon, 1906, 101 Me. 533, 64 A. 950; Wells v. Gould and Howard, 1932, 131 Me. 192, 160 A. 30. This same principle has been applied in workmen's compensation cases. Gauvin's Case, 1933, 132 Me. 145, 167 A. 860; Mitchell v. Peaslee, Jr., 1948, 143 Me. 372, 63 A.2d 302.

Since the injured person may recover against the party responsible for the original injury damages flowing from the subsequent negligent medical treatment of said injury, the Courts in a majority of jurisdictions have adopted the general rule that recovery from, or settlement with, the original wrongdoer in and of itself bars a recovery against the physician charged with having aggravated that injury by negligent and unskilful treatment. And the same rule has carried over in workmen's compensation settings. For cases representing the majority rule, see Phillips v. Werndorff, 1932, 215 Iowa 521, 243 N.W. 525; Williams v. Dale, 1932, 139 Or. 105, 8 P.2d 578, 82 A.L.R. 922; Thompson v. Fox, 1937, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550; Makarenko v. Scott, 1949, 132 W.Va. 430, 55 S.E.2d 88; Farrar v. Wolfe, Okl.1960, 357 P.2d 1005; Hartley v. St. Francis Hospital, 1964, 24 Wis.2d 396, 129 N.W.2d 235, 130 N.W.2d 1; see also, annotations in 50 A.L.R. page 1057 et seq., 82 A.L.R. page 932 et seq., 112 A.L.R. page 553 et seq., 40 A.L.R.2d page 1075 et seq., 73 A.L.R.2d page 403 et seq. and cases cited; 41 Am.Jur. Physicians and Surgeons, §§ 136–137; 76 C.J.S. Release § 50, page 691.

The reasons underlying the majority view have been stated variously as follows: the injured party has a legal remedy only to obtain compensation for the damage done to him and when that compensation has been received from the wrongdoer, his right to further remedy is at an end; the damages of a plaintiff whose initial injury has been aggravated by the negligence of a physician who treated the injury are entire and indivi-

sible and for the injury and its aggravation the injured person may have but one full satisfaction; the injury resulting from the joint action of the wrongdoers is a single injury and constitutes the basis for a single cause of action; it must be presumed that a settlement with one of the joint tortfeasors represents a full satisfaction of the entire claim and that any further recovery would involve double compensation for the same injury. None of these reasons present a persuasive or decisive judgment compelling us to institute a conclusive and arbitrary rule of law to the effect that settlement with or satisfaction by the original tortfeasor ipso facto discharges the cause of action for malpractice against the attending physician, notwithstanding the absence of full satisfaction of both injuries in fact or in intendment.

The doctrine of unity of discharge regardless of intent and full satisfaction in fact as espoused by the majority view has been severely criticized by modern commentators and its disapproval more particularly emphasized in the following statement by Prosser, Torts (2d ed.) p. 244: "Even as applied to cases of concerted action, the rule seems at best an antiquated survival of an arbitrary common law procedural concept, and it has no reasonable application to cases of mere concurrent negligence. The fear of double recovery is meaningless, since the amount paid under the release must be credited to the second tortfeasor in any case." See Selby v. Kuhns, 1963, 345 Mass. 600, 188 N.E.2d 861, at page 864; Derby v. Prewitt, 1962, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 at page 558.

Furthermore, in cases involving settlements under the Workmen's Compensation Act, where the releasee is the employer, the latter's liability under the Act, we must always bear in mind, need not be based upon any wrongdoing on the part of the employer as the employee's injury may be entirely due to the simple negligence of the employee himself or to pure accident. The employer must partly recompense the injured person for his lost earning power, paying nothing

for mental anguish or physical pain and suffering. Where the benefits under the Workmen's Compensation Act only partially reimburse the injured employee, as a matter of economic legislative policy, there is no sound equitable basis for the application of the rule of unity of discharge regardless of intent and satisfaction in fact.

Also, neither the employer who is responsible for the original injury to his employee for any accident arising out of and in the course of the employment, nor the person who negligently injures another, is a joint tortfeasor with the physician whose negligence thereafter aggravates the original injury. Their wrongs are independent and successive, rather than joint, and this being so, the plaintiff had two separate and distinct causes of action, one against his employer under the Workmen's Compensation Act, and the other under the common law against the doctor for his alleged malpractice in treating the plaintiff's back injury, subject however to the rights of subrogation provided by the Act. The fact that plaintiff's employer, on proof that plaintiff's accident arose out of and in the course of his employment, could have been held liable to pay benefits under the Act because of the aggravation of plaintiff's injury caused by the doctor's negligence, that liability would have resulted not from any concept of joint wrongs but rather from the rule of law that the employer is responsible for the reasonable foreseeable consequences connected with a compensable accident.

Where, in the instant case, this Court is concerned not with a joint tort but with an industrial accidental injury followed timewise by the independent tortious act of the treating physician who aggravated the original injury, sound public policy demands that the release of the employer from all further payment of compensation or other benefits under the Act on account of the employee's injury be not given the effect of automatically releasing the malpracticing doctor who, though he has contributed in no part whatsoever towards the satis-

faction of the injury he wrongfully inflicted, seeks a windfall because of the compromise of the industrial accident claim against the employer. We hold, in accordance with the modern trend of the authorities, that the rule of unity of discharge does not apply in the instant case and that such settlement as the plaintiff made with his employer and such release as he gave in full discharge of the employer's liability under the Act do not of and in themselves release the defendant attending physician from damages proximately flowing from his negligent treatment of plaintiff's injury, and that such settlement and release may so operate to discharge the defendant doctor for his negligent aggravation of plaintiff's original injury only if it was the intention of the injured plaintiff so to release him or if the compensation received from the employer responsible for the original injury was in full compensation of the injury suffered as aggravated by the malpractice. In cases such as the instant case where the doctor's alleged tortious acts differed in time and place of commission as well as in nature from the acts or happening through which the original injury was sustained, and especially where the employer and employee reached their settlement of the disputed claim respecting the original injury in the light of an express understanding that the employee would pursue his remedy against the defendant doctor for the malpractice, there appears no sound reason to support a rule of constructive satisfaction of plaintiff's right of action by payment of the lump sum settlement award.

██ Whether the settlement award and release were intended by the injured plaintiff to release the defendant doctor as well as the employer or whether the compensation received was in fact full compensation of the whole injury suffered by the plaintiff are factual jury questions depending upon proof at trial and not susceptible of determination as a matter of law in summary judgment proceedings, at least on the showing made in the instant case by the defendant on the present state of the record. It must be determined at trial whether the amount paid in settlement award was full satisfaction in fact of the malpractice claim and if not what is the uncompensated amount of that claim. See Wheat v. Carter, 1919, 79 N.H. 150, 106 A. 602; Ash v. Mortensen et al., 1944, 24 Cal.2d 654, 150 P.2d 876; Couillard v. Charles T. Miller Hosp., Inc., 1958, 253 Minn. 418, 92 N.W.2d 96; Daily v. Somberg, 1958, 28 N.J. 372, 146 A.2d 676, 69 A.L.R.2d 1024; Derby v. Prewitt, 1962, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E. 2d 556; Selby v. Kuhns, 1963, 345 Mass. 600, 188 N.E.2d 861; Hansen v. Collett, 1963, 79 Nev. 159, 380 P.2d 301.

Our Court in Wells v. Gould and Howard, 1932, 131 Me. 192, 160 A. 30, did not apply a different rule. In that case, the plaintiff had obtained a prior judgment against the original tortfeasor in the automobile collision wherein she received her initial injury. Satisfaction of that judgment was entered upon the records of the trial court. In the malpractice suit, the defendant doctors pleaded in defense the judgment obtained by the plaintiff against the original tortfeasor and its satisfaction. The Court said that "[i]n the eyes of the law, the plaintiff's cause of action here sued upon has been extinguished. The defendants were entitled to a verdict." But the Court indicated at page 193 of the Maine report of the case, that the evidence in the case to support the affirmative defense of satisfaction of judgment was the docket entry in the prior suit of "Judgment for plaintiff $600: Judgment satisfied." The Court was aware and so noted that "[n]o attempt is made to impeach or explain this evidence." Without any explanation, the Court had to presume that the plaintiff had obtained in the prior judgment against the original tortfeasor a full assessment of the damages in respect to her injuries including such as were suffered by reason of the superadded malpractice and that satisfaction of that judgment of record without further elucidation signified full compensation for her loss so that in equity and good conscience no further recovery of damages could be enter-

tained. Thus, that decision is not affected by, nor does it affect, in any way our holdings herein.

The plaintiff's third point of appeal to the effect that the trial Justice erred in denying his motion to join the employer as a third party defendant was not argued and is considered waived.

There was error below and the entry shall be.

Appeal sustained.

RUDMAN, J., did not sit.