## SAMUEL AND JOHN BLAKE CLEAVELAND v. THE GRAND TRUNK RAILWAY COMPANY OF CANADA.

*Joint Action.  Parties.  Evidence.  Burden of Proof.  Prima Facie Case.*

Where two or more have a joint interest in the damage caused by the destruction of buildings by fire through such fault of another as would make him answerable therefor, they may maintain a joint action for the loss without having jointly the legal title in the buildings destroyed.

A and B were and for some time had been in joint possession and control of certain buildings, and the property therein, destroyed by fire through the defendants' fault, and had a joint interest in the loss sustained. A had the legal title to the realty, but

had entered into a bond with B binding upon themselves, their heirs, executors and administrators, respectively, upon the part of B to pay certain notes given by A in payment for said realty, and upon the part of A to convey to B, upon such payment, an undivided half of said realty in fee-simple, so that B would become an equal partner with A in said realty. *Held* that they had such joint interest as entitled them to maintain a joint suit against the defendants for damage to the buildings by said fire.

The plaintiffs claimed, and their evidence tended to prove, that the fire, by which their property was destroyed, originated by fire communicated by the engines of the defendants. The latter gave evidence to the effect that an engine was never suffered to go on a trip when not in good condition, or when defective in the ash or fire-pans and dampers, or in the screen or smoke-stack, which are the only places where fire can escape. The plaintiffs gave evidence, without objection, tending to show that engines of proper construction and suitable repair would not scatter fire so as to endanger property. *Held* that, for the purposes offered and under the circumstances of the case, evidence on the part of the plaintiffs, that the defendants' engines in use and running over that division of the road where said property was situated, at or about the time of the. fire in question, generally and habitually scattered fire from ash-pans and smoke-stacks in the vicinity of said property, was admissible.

Also, *held,* that in order to make a *prima facie* case, it is only necessary to prove that the 'fire which destroyed the property was communicated by fire from the defendants' engine.

ACTION ON THE CASE, to recover for loss sustained by a destruction of the plaintiffs' property by fire, alleged to have been communicated by fire from an engine of the defendants. Plea, the general issue and trial by jury, March Term, 1869, PROUT, J., presiding. The writ was dated February 12, 1867.

The plaintiffs, in order to show title to the real estate alleged to have been injured and destroyed, as set forth in their declaration, introduced in evidence a deed from Aaron A. Adams and John Thornton, to said John B. Cleaveland, dated Oct. 12, 1861, in which they conveyed to him the undivided half of certain lands and premises, which included the premises injured, and there was no question made that the deed conveyed a good title of such half to him. In order to show a title in the plaintiffs to said premises, they also gave in evidence a certain bond, dated Oct. 12, 1861, from John B. Cleaveland to Samuel Cleaveland, and they showed no other title in Samuel Cleaveland, except that it appeared that he and the other plaintiff were jointly in possession of the premises injured at the time of the fire, and had been so in possession carrying on the same ever since the date of said bond. It did not appear whether the said Samuel Cleaveland had paid any thing on the notes mentioned in said bond.or not.

The fire took place on the 17th of June, 1862, and the plaintiffs claimed, and their testimony tended to prove, that it originated by fire communicated by an engine of the defendants in the forenoon of that day, which fire was first seen when but small and located near the railway track, about sixty rods southerly from the mill burnt and destroyed, but it did not appear from what particular engine the fire was communicated.

The defendants' railway was built before the plaintiffs' mills and other buildings were built or erected. The said mills and other buildings were in the township of Norton in this state, and very near the Province boundary line, and when said railway was constructed, it was made in that location for many miles through a wilderness. The defendants commenced to run the road in July, 1853, and the mills were erected by the plaintiffs' grantors in the fall of that year, and, with additions to them, were the same burned on the occasion referred to.

It appeared that at the time of the fire there had been a drought for some time and that it was very dry. The plaintiffs claimed and introduced evidence tending to show that engines of proper construction and suitable repair would not scatter fire so as to endanger property, which the defendants' testimony tended to contradict.

As tending to show that the defendants' engines were not in suitable repair at the time of the injury, and, also, as tending to show that the fire which destroyed the plaintiffs' property, described in their declaration, was communicated by said defendants' engines, and as bearing upon the question whether or not the defendants used due care and diligence and employed suitable expedients to prevent such an injury as complained of, the plaintiffs were allowed to prove and show, *against the defendants' objection*, that on or about the time of the fire in question, the engines in use by the defendants, and then running over this division of the defendants' railway and past the plaintiffs' mills, generally and habitually scattered fire from the ash-pans and smoke-stacks of said engines, and in the vicinity of and as they were run by the place where the property of plaintiffs was destroyed, which was situated adjoining and near the defendants' railway track, and

some of the plaintiffs' witnesses who gave evidence of this char-
acter could not fix the date any more definitely than to say
that it was about the time the fire occurred, the same season, and
before the fire complained of. Other of the plaintiffs' witnesses
testified to the setting of fires by the defendants' engines, and the
rattling of coals and sparks from defendants' engines, during the
day of the fire on which plaintiffs' property was destroyed, and in
its immediate vicinity, but before the fire occurred, and also on
various days and times immediately preceding that day.

A book of regulations of the defendant corporation was intro-
duced by the defendants without objection, and the defendants
read section 22 on page 20, a part of which reads as follows:

" Every engineman must carefully examine his engine after
each journey, and he must immediately report to the locomotive
foreman, and enter in the book that is kept for that purpose,
any defect or deficiency in the engine or train. He must also
report to the locomotive foreman and to the station-master, or
station-clerk, at the nearest station, any accident, neglect, or
irregular occurrence that he may have observed on the journey."

The defendants introduced the testimony of the employees and
engineers of said defendants employed on this division of the
road, tending to show that said regulation was carefully observed,
and that an engine was never suffered to go on a trip or journey
when not in good condition, or when defective in the ash or fire-
pans and dampers, or in the screen of the smoke-stack, which are
the only places where fire can escape, which the plaintiffs' testi-
mony, of the character above detailed, tended to contradict. It
appeared that at least four engines with trains went past the
property destroyed on the day of the fire and before the fire was
discovered. It also appeared that the Grand Trunk Railway is a
long road and uses a great many engines and that many of them
frequently passed this place in the course of a season.

The jury, under the charge of the court, returned a verdict for
the plaintiffs for the sum of $6,999.30, including interest from the
time of the fire to the time of trial, specially finding under the di-
rection of the court, and apportioning the interest; that of this
sum $1,102.70 was for the dwelling-house, barns, shed and bridge

destroyed; that $2,728.03 was for one half interest of the saw-mill and machinery therein destroyed; and the sum of $3,168.57, which was for the personal property destroyed by the fire referred to.

The plaintiffs' interest in all of said real estate, including the machinery in the mill, depends upon said bond, and their occupancy and possession of the property.

The charge of the court to the jury was satisfactory, except upon the question of plaintiffs' title and interest in the real estate and machinery in the mill injured and destroyed by said fire. Upon that point the court instructed the jury, for the purposes of this trial, that the aforesaid deed and bond, together with the plaintiffs' possession and occupancy thereof, as detailed, made out such an interest and title in the plaintiffs to said property, as entitled them to maintain this action in respect to that property, if the case was made out in other respects, in regard to which the charge was full and satisfactory, and such as the case required. To the instructions upon that point, and the admission of the evidence objected to by the defendants, they excepted.

Said bond was as follows:

"Articles of agreement made and entered into the 12th day of October, in the year of our Lord 1861, between Samuel Cleaveland, of the township of Norton, Vermont, of the one part, and John Blake Cleaveland, of the township of Barnston, county of Stanstead, province of Canada, of the other part, in manner following, that is to say: The said Samuel Cleaveland, his heirs, executors and administrators, do covenant, promise and agree to and with the said John B. Cleaveland, his heirs, executors and administrators, as follows, that is to say: That he, the said Samuel Cleaveland, his heirs, executors and administrators, shall and will well and truly pay, or cause to be paid, unto Aaron A. Adams and John Thornton, their heirs, executors and administrators, the full sum of one thousand three hundred and fifteen dollars, as expressed in six promissory notes, bearing even date with this instrument, payable to the said Adams and Thornton, and signed by John B. Cleaveland, to them the said Adams and Thornton, or their order."

Here follows a statement of the amount of each note, and that they were payable in one, two, three, four, five and six years respectively.

"And the said John Blake Cleaveland, for himself, his heirs,

executors and administrators, do covenant, promise and agree to and with the said Samuel Cleaveland, his heirs and assigns, that he, the said John B. Cleaveland, his heirs, executors and administrators, shall and will, upon payment of the said sum of one thousand three hundred and fifteen dollars, and the interest, in manner and at the time aforesaid, (which is a condition precedent,) well and truly convey, or cause to be conveyed, in fee simple, to the said Samuel Cleaveland, his heirs and assigns, that certain pieces or parcels of land, situated in the township of Norton aforesaid, known and distinguished as parts of lots Nos.," etc.

Here follows a statement of the numbers of the lots.

" * * and part of the land lying east of No. 129 and on No. 130, as expressed in the deed bearing even date with this instrument, from the said Adams and Thornton to him, the said John B. Cleaveland, it being the equal undivided one half of all of the aforesaid tracts or parcels of land as mentioned in said deed, so that the said Samuel Cleaveland will become an equal partner with the said John B. Cleaveland in all the before-mentioned lands and premises, on the day and year last aforesaid ; and for the true performance of the said covenants, the said parties bind themselves, their heirs, executors and administrators, each to the other in the penal sum of ten thousand dollars.

" In witness whereof, the said parties to these presents have hereunto set their hands and seals the day and year first above written."

Signed, sealed and witnessed.

The date of this instrument is the same as the date of the deed of Adams and Thornton to J. B. Cleaveland, and the amount to be paid by Samuel to J. B. Cleaveland is one half the amount of the notes of J. B. Cleaveland to Adams and Thornton, which notes are all of the same date with the deed of Adams and Thornton to J. B. Cleaveland, and with this instrument.

*George N. Dale* and *William Heywood*, for the defendants, maintained that the evidence as to the scattering of fire from the engines was improperly admitted. *Boyce* v. *The Cheshire R. R.*, 42 N. H., 97 ; *Hubbard* v. *The A. & K. R. R.*, 39 Me., 506 ; *Robinson* v. *The F. & W. R. R.*, 7 Grey, 92 ; *Milton* v. *Nesbit*, 1 Car. & Payne, 70 ; 4 Stark. Ev., 381 ; 1 Green. Ev., § 353 ; *Holcomb* v. *Hemson*, 2 Camp, 391 ; *Phelps* v. *Conant*, 30 Vt.,

277; *Collins* v. *Dorchester*, 6 Cush., 396; *Standish* v. *Washburn*, 21 Pick., 237.

The plaintiff, Samuel Cleaveland, had no title to the property destroyed except what the bond referred to gave him. He had not performed the conditions therein provided for him to perform, and therefore not only had no title, but was not *entitled* to a deed. He simply had possession with the other plaintiff of the property at the time of the fire and not after. He never took a deed, and for aught that appears in the case he let the title remain where it was, or pass by him from the other plaintiff. If we should concede, for the sake of the argument, that this plaintiff had such a possession as would enable him to maintain an action to recover damage done him in respect to his *possession* of this property, it by no means follows that he could maintain an action for the *destruction* of the property. The statute which creates this remedy does not indicate any other rule, but aids the one for which we contend.

*Ossian Ray, William S. Ladd* and *Henry Heywood,* for the plaintiffs, maintained that the testimony in relation to the defendants' engines scattering fire was competent to be submitted to the jury. *Sheldon* v. *Hudson River R. R. Co.,* 14 N. Y., 218; *Field* v. *N. Y. C. R. R.,* 32 N. Y., 339; *Aldridge* v. *G. W. Railway,* 3 M. & G., 515; *Piggott* v. *East. Co. Railway,* 3 C. B., 229; *Christy* v. *Smith,* 23 Vt., 663; *Hegmen* v. *Western R. R. Co.,* 13 N. Y., 9; *Ellis* v. *R. R. Co.,* 2 Iredell, 138.

This suit was properly brought in the name of both plaintiffs, because they were joint owners of the personal property, and were jointly in possession and joint equitable owners of the real estate destroyed by the fire. 1 Ch. Pl., 61–64, 380; *Coryton & Harvey* v. *Lithebye,* 2 Saund., 114, and notes; *Weller et al.* v. *Baker,* 2 Wilson, 423; *Chesley* v. *Thompson,* 3 N. H., 9; *Ashbey et al.* v. *East R. Co.,* 5 Met., 368; *George* v. *Fisk & Norcross,* 32 N. H., 32; Bouvier's Law Dic., Tit. Parties, 267; 2 Gr. Ev., § 227; *Patten* v. *Gurney,* 17 Mass., 182; *Thompson* v. *Hoskins,* 11 Mass., 418; *Gilmore* v. *Wilbur,* 12 Pick., 120; *Glover* v. *Austin,* 6

Pick., 120 ; *Day et als.* v. *Ridley*, 16 Vt., 48 ; *Daniels* v. *Daniels*, 7 Mass , 135.

The opinion of the court was delivered by

BARRETT, J.   The plaintiffs claimed, and their evidence tended to prove, that the fire by which their property was destroyed originated by fire communicated by an engine of the defendants. The plaintiffs were not bound to prove any thing further in the first instance.   The burden then, under General Statutes, ch. 28, § 78, was cast on the defendants, in order to exonerate themselves from liability for the plaintiffs' loss, of showing " that they had used all due caution and diligence, and employed suitable expedients to prevent such injury."   It would seem, however, from the structure of the bill of exceptions, that the plaintiffs went further and introduced evidence tending to show that the defendants were guilty of actual negligence.   This could not vitiate the effect of the evidence previously given, even though it should have failed to prove such negligence.   It was not necessary that the plaintiffs should give such evidence at all, except to meet evidence of the defendants tending to show that they had used the caution, diligence and expedients named in the statute.   Such evidence the defendants did give, and to the effect " that an engine was never suffered to go on a trip or journey when not in good condition, or when defective in the ash or fire-pan and dampers, or in the screen or smoke-stack, which are the only places where the fire can escape."   If this had been found to be so, it would have left the defendants acquit of liability, so far as it was depending on their caution and diligence in that respect.   It will be noticed that this evidence extended to and embraced every engine of the defendants going on a trip or journey, and of course embraced the engine by which the plaintiffs' evidence tended to show the fire was communicated.   Was the evidence which was objected to pertinent to meet that evidence given by the defendants ?

It is to be noticed that the plaintiffs, in addition to the evidence tending to show that the fire was set by an engine of the defendants, gave further evidence that was not objected to, tending to show " that engines of proper construction and suitable repair

would not scatter fire so as to endanger property." The logical result of these two pieces of evidence would seem to be in the direction of the fact that the engine from which the fire was set was not of proper construction and suitable repair. In connection with the testimony on the part of the plaintiffs already referred to, it would seem legitimate for the plaintiffs further to give evidence, as they did, "that on or about the time of the fire the engines used by the defendants, running past the plaintiffs' mills, generally and habitually scattered fire from the ash-pans and smoke-stacks," etc., as stated in the exceptions, and objected to,—it appearing that the defendants had a large number of engines, which they were using indiscriminately over that part of their road. For the inference would be from this evidence, in connection with that tending to show that engines, which so scatter fire as that it kindles along the roadside, are not of proper construction and suitable repair, that the fire in question was caused by one of those defective engines. It does not present the case of undertaking to argue from proof of general negligence to the fact of a particular act of alleged negligence, or from the fact that one thing was defective to the alleged fact that another thing of the same kind and use was also defective. The argument is this, the evidence tended to show, and the fact was not denied, that the fire was set from an engine of the defendants. Other of the evidence tended to show that engines of proper construction and suitable repair would not scatter fire so as to endanger property. Other evidence tended to show that about the time, and on the day of the fire, and before it occurred, the defendants were running engines by the place in question that did scatter fire to such an extent that fires were set by it.

The inference is, that, of the defendants' engines, the one by which the fire was set was one that scattered fire. But it is already in evidence that an engine that will do that to such an extent is not of proper construction and suitable repair. The reasoning is direct to the condition of the defendants' engine by which the fire was set. Without discussing this aspect further, we think the case of *Sheldon* v. *Hud. R. R. Co.*, 14 N. Y., 218; *Field*

v. *N. Y. Central R. R.*, 32 N. Y., 339, and 54 Penn., 345, are full authority for the admission of the evidence.

But there is another view in which the evidence was pertinent. The defendants gave evidence that an engine was never suffered to go on a trip or journey when not in good condition, or when defective in any of the places where fire can escape. The evi-. dence objected to in connection with the other evidence of the plaintiffs tended to contradict that evidence of the defendants and show it was not true, and it was only coextensive with that evidence of the defendants either in subject matter or in time.

As to the other question made in the argument, we assume without discussion, that, in order to entitle parties to maintain a joint suit, they must have a joint interest in the subject matter in respect to which the injury has been wrought, or in the damage for which they seek to enforce compensation. See *Croyton et al.* v. *Lithebye*, 2 Saunders, 114, and notes ; 2 Greenl. Ev. § 227 ; 1 Chit. Pl., 62, 64. In this case the plaintiffs claim to recover damages for buildings, saw-mill machinery, and other personal property. No papers but the bill of exceptions and a copy of the bond named therein have been furnished to the court. It appeared that Samuel Cleaveland and the other plaintiff were in joint possession of the property at the time of the fire, and had been so, and so carrying them on continuously from the date of the bond. So far as injury to joint rights involved in, and growing out of, such joint occupancy and use is concerned, the propriety of a joint action is not questioned ; nor so far as injury by the destruction of personal property owned in common is concerned. The objection in this suit rests mainly upon the ground that, as Samuel had not a legal title to the real estate, but it was wholly in the other plaintiff, this suit can not be maintained to recover damage for the burning of the buildings. This would be so if the plaintiffs could not have a joint interest in the buildings, or in the damage caused by their destruction, without having jointly the legal title to the real estate including the buildings. It is to be borne in mind that this action does not necessarily involve the question of legal title, but only the fact and relation of interest in the property, such as to make the plaintiffs in common or jointly subject

to loss by the destruction of the property that was burned. *Ashby et al.* v. *Eastern R. R. Co.*, 5 Met., 368 ; *George* v. *Fisk et al.*, 32 N. H., 32. In Hammond's Parties to Actions, § 2, p. 42, it is said : " Where two or more suffer by an injurious act, and the damage to one is the same as to the other, they are entitled jointly to repair it. One loss only has been sustained, and therefore only one satisfaction is due ; to this, one has not a better claim than the other ; of necessity these both are jointly concerned in demanding it. * * * It is not the injurious *act* of which they complain, but only its *consequences.*"

In the bond Samuel binds himself, his heirs, executors and administrators, absolutely, and without condition, to pay the specified notes. This could be enforced against him, whether the other plaintiff should perform his covenant or not. That obligation rested on him from the execution and delivery of the bond, and will continue till it shall have been discharged by his performing it, or by the act of the other party. On the other hand, when said notes shall have been so paid, then said John B. Cleaveland is bound by absolute obligation to convey an equal undivided half of the certain " tracts or parcels of land."

Now it is plain that he would perform that obligation by conveying such undivided half of said " tracts or parcels of land," by the description called for by the bond, notwithstanding the buildings had been burned off. He would be under no obligation to replace them, in order effectually to make the conveyance and assurance of title required by the bond. In such condition of things, the said Samuel would have paid the purchase price of the undivided half of the property, including the buildings, and would be compelled to take such undivided half, with the buildings gone, in satisfaction and discharge of the legal obligation of John B. created by the bond. John B., in pecuniary result, stands virtually in the same condition as Samuel ; for he was bound to pay to Adams and Thornton for the property, with the buildings included, but would find it on his hands with the buildings gone ; yet, with Samuel's obligation in force, out of and by virtue of which he could reimburse himself for one half the value of the buildings, and stand in for the loss of the other half himself.

Thus, then, the fire operated a common and equal loss to the two plaintiffs, as the result of the relation they sustained to each other in reference to the property destroyed.

It was of equal and common interest to both that the burnt property should be replaced, in order that they might continue to stand in the same condition, in respect to the entire property, under the relation created by the bond, that they were respectively in when the bond was executed, and continued to be in up to the time the fire occurred, and are entitled to be in as against the defendants, when the time shall arrive for the fulfilment of the respective obligations of the bond, by paying the specified notes on the one part, and by making the conveyance of title according to the covenant, on the other. This equal and common interest can be secured to them only by yielding to them, in common, by the defendants, the value of the property destroyed, as a substitute for the property itself, the plaintiffs being entitled to have and hold the money, as between themselves, just as they were holding, and, but for the faulty negligence of the defendants, they would have continued to possess, and carry on the burnt property. Indeed, this would seem to be the only proper way in which their respective rights against the defendants could be wrought out. For, as between John B. and Samuel, John B. is entitled to only one half of the damages recoverable for the burning of the buildings, and Samuel is entitled to the other half, and yet the defendants are liable for the whole. The burning was the one entire act which fixed that liability—the injury was entire; but it was equally and in common shared by the two plaintiffs. In other words, they have a common and equal interest in the loss, and ought not to subject the defendants to two suits to recover severally for that loss. Then again, assuming what is clearly true, as before stated, that John B. could discharge his covenant by conveying the land, with the buildings gone, and supposing that he should recover in his own name the entire damages for the property destroyed, whose would the money be in his hands ? By the defendant's theory it would be his, and in no part Samuel's; for it is as *damages* that he would be holding it, and by the very assumption Samuel would have no title to or interest in them ;

for if he had, then it would give him the right to sue for and recover to the extent of such title and interest as he had in the damages. And so John B. would be able to hold the whole, and at the same time might compel Samuel, by virtue of the bond, to pay one half the value of the burned property, who would have no recourse to John B., nor right of redress as against the defendants. The same rule and reason that would preclude him joining in an action with John B. would equally preclude him from suing in his own name alone. The fact of the joint possession, and joint carrying on of the property, from the date of the legal title in John B., and of the bond between the plaintiffs, is significant of the relation that the parties themselves understood to exist between them in reference to the entire property. Though lacking the formality of conveyances required by law to vest the legal title in Samuel, the practical result of what was done, and such as a court of equity would be likely to effectuate, is much the same as if John B. had given Samuel a deed of warranty of the equal, undivided half, and Samuel, for the purchase money, had given his notes of the same character as those he covenanted to pay, and had given a mortgage on the same property to secure their payment, and thereupon they both had entered jointly into the possession of the property, and were carrying it on as equal partners, to use the expression in the bond. The right of Samuel is not affected by the fact that he had paid nothing on the notes named in the bond, for nothing had become due on them when the property was destroyed, and the parties stand for their rights and liabilities on the state of facts as they existed at that time. He is absolutely bound by the bond to pay ; and, as against anybody but John B., he is entitled to stand upon the relations, rights and interests thus created and mutually acted upon by him and John B. It is not to be assumed that he will not fulfil his obligation to John B., and so long as John B. is content in respect to the fulfilment of that obligation, the defendants have no footing or reason for claiming any immunity, on the assumption or the presumption that it will not be fulfiled.

It would not seem quite satisfactory, if, in the present case, the law should require the court to hold that the right of action

was in John B. severally and solely, thus enabling him to recover double what he would be equitably entitled to hold, as against Samuel, and yet, while holding it, he could discharge his legal obligations under the bond by conveying the tracts or parcels of land, as " nominated in the bond," naked of the buildings for which he already had the money in his pocket, leaving the ultimate adjustment between them, perhaps, exposed to the expense and perils " of the law's delays" and " glorious uncertainties."

The measure of the defendants' liability, upon their theory of the objection to the joint action, is only the same in this suit that it would be in a suit by John B., as sole plaintiff. While, therefore, the joint action will work no injustice to the defendants, and will, at the same time, do exact right and justice as between the plaintiffs, and close the door against litigation between them, in reference to the damages recoverable of the defendants, it is satisfactory to find that the technical rules of the law not only do not interpose any obstacle to the maintaining of the suit as it was brought, but justify and warrant it. It is noticeable that neither of the learned counsel for the defendants cite any authority in support of the objection to the joint action, and one of them did not make the point in his very elaborate brief, nor in his argument.

The judgment of the county court is affirmed.