## CHARLES W. PIERCE

*vs.*

## BANGOR AND AROOSTOOK RAILROAD COMPANY.

### Piscataquis.    Opinion May 22, 1900.

*Railroad.   Fire.   Negligence.   Evidence.   R. S., c. 51, § 64.*

The liability of a railroad company to make compensation for injury to property along its route by fire communicated by a locomotive engine in its use, created by statute, R. S., c. 51, § 64, is co-extensive with the right given to the railroad company by the same statute to insure such property.

For the company to be liable there must be such elements of permanency in the situation of the property that the railroad company may have a reasonable opportunity to protect itself against its liability by insurance. Upon this principle a railroad company is not liable for the destruction of property, under the statute, temporarily located along its route and which may be so soon and so readily moved that the company can not, by the exercise of reasonable diligence, protect itself against liability by insurance; but the company is liable under the statute for merchandise, lumber or other chattels regularly and permanently located along its route.

*Held;* that the property of the plaintiff destroyed by fire communicated by a locomotive engine, in the defendant's use, had such elements of permanency in its situation and other conditions as to place it within the protection of the statute.

The plaintiff testified that shortly before the fire he had taken an account of the ship-knees, the property destroyed; that in the first instance he made his memoranda upon a shingle, and subsequently, upon the conclusion of his account-taking, he transferred the result of his account to a small memorandum book. In answering a question as to the number and sizes of these ship-knees destroyed, he was allowed by the court to refer to the small memorandum book for the purpose of refreshing his recollection, against the defendant's objection as stated that, "this book is not a book of original entry." *Held;* that the ruling was correct; that for this purpose it was not necessary that the writing should have been an original one.

Where objection is made because the witness after referring to his memoranda had no independent recollection of the facts that he testified to, *held;* that this objection is also unavailing. A witness may be allowed to assist his memory by referring to writings, when he recollects having seen the writing before, although he has at the time of testifying no independent recollection of the facts mentioned in it, if he remembers that at the time he saw the writing before, he knew the contents to be correct.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

Case under R. S., c. 51, § 64, for destruction of ship-knees by fire from defendant's locomotive engine.

The case is stated in the opinion.

*H. Hudson* and *M. L. Durgin*, for plaintiff.

*F. H. Appleton* and *H. R. Chaplin*, for defendant.

Exceptions to testimony: The original shingle should have been produced—it being a fact that the witness had no independent recollection of the number and sizes of the twelve hundred and odd knees in and about his shed. "In cases where the witness after refreshing his memory, has no independent recollection of the facts to which he is called to testify, but relies on a memorandum which he says he once knew to be correct, the original writing must be produced in order that the court and jury may judge of the reliability of the evidence, and the opposing witness may have an opportunity to cross-examine the witness upon every part of it." 8 Ency. of Pl. & Pr. p. 142, and cases cited.

The book should have been verified by the plaintiff as a true copy of the shingle. When a witness after refreshing his memory, recollects the facts and testifies thereto from his own recollection of the same it is of no consequence whether the paper used is the original memorandum, or a copy thereof, provided he knows the facts stated in the original are true and that the paper used is a true copy of the original. 8 Ency. Pl. & Pr. p. 140, and cases cited; and upon both of these points he must be clear and explicit in his testimony before he can be allowed to refresh his memory from the copy. *Chicago, etc., R. Co.* v. *Alder*, 56 Ill. 344.

There are cases which hold that a witness may refresh his memory from any book or paper if he can swear to the fact from recollection. But that rule does not obtain in this case. Quantities and values are retained in the memory with great difficulty, and the plaintiff does not intend to swear as a matter of recollection, as to the number of different sizes of knees therefrom. He was unable to swear to the fact of the different numbers of each size, except as it appeared in this book—it was not a matter of memory with

him—it was a memorandum upon which he wholly relied, and for that reason we say the original should have been produced.

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

WISWELL, J.   This is an action to recover damages for the destruction of a quantity of ship-knees belonging to the plaintiff and situated along the route of the defendant's railroad, by fire communicated by a locomotive engine in the defendant's use.   The plaintiff's writ contains two counts, one, alleging that the destruction of the plaintiff's property by fire was caused by the defendant's negligence, the other, based upon the statute, R. S., c. 51, § 64.

At the trial there was no controversy as to the nature, location or description—except as to quantity—of the plaintiff's property, and the testimony on behalf of the plaintiff, as to the time during which and the manner in which he had been storing these ship-knees in the place where they were when destroyed by fire, was undisputed.   Consequently the justice presiding instructed the jury, in effect, that the defendant was liable under the statute and that they need not consider the allegations of the defendant's negligence.   To this instruction the defendant excepted, the only question presented thereby being as to whether the nature, situation and condition of the plaintiff's property and the length of time during which the place where the loss occurred had been used by the plaintiff for this purpose, were such as to bring this property within the meaning and protection of the statute upon which this count in the writ was based.

From the uncontradicted testimony upon the part of the plaintiff, these facts appear:   The property destroyed by fire was along the route of the defendant's railroad, in fact, it was within and about a storehouse or shed on the company's land, placed there with the consent of the defendant's predecessor in the ownership of the road, and maintained, since 1892, with the implied consent of the defendant.   It was built by the plaintiff in the year 1881 or 1882, for the purpose of storing ship-knees therein.   The shed was an inexpensive one, costing originally, as testified by the plaintiff,

about $125, but it was a frame building, placed upon cedar posts set in the ground, its roof was boarded and shingled and its sides boarded, although the lower boards were removed from time to time as the plaintiff had occasion to do so for the purpose of putting in or taking out these knees. The building was ninety-two feet long, nineteen feet wide and sixteen feet posted on the one side and eleven to twelve feet on the other.

From the time that this shed was first built in 1882, ten years before the defendant commenced the operation of the railroad, up to the time of its destruction by fire, May 21, 1896, it had been continuously used by the plaintiff for the storage of knees, which he was engaged in the business of buying, getting out himself and selling; and during all of that time, according to the undisputed testimony in behalf of the plaintiff, he had also occupied the land in the immediate vicinity of the shed for the purpose of piling there these knees. A portion of the knees was each year brought there upon the defendant's railroad, unloaded from a siding near the shed, hauled some distance by the plaintiff to his mill to be finished or dressed, and then hauled back to the storehouse where and about which they were stored until sold, when they were generally shipped over the defendant's railroad. The plaintiff testified that this business had amounted during these years to something about $7000 each year.

Under these circumstances we think that the plaintiff's property, that outside of the shed as well as inside, came within the protection of the statute, and that the ruling that the defendant was liable for its destruction by fire admitted to have been communicated by one of its engines, was correct.

When this statute was first considered by the court in *Chapman* v. *Railroad Company*, 37 Maine, 92, the court construed it as giving to the railroad company a right to insure property along its route co-extensive with the company's liability for its destruction. " To make this right to insure property of any practical value to the corporation, the property must be of such a character and so situated, as to render insurance practicable by the use of reasonable diligence." And it was then decided that a railroad company is

not liable under this statute for property which is so temporarily located along its route that the company does not have a reasonable opportunity to insure it.

This general principle has been followed by the court in all of the cases that have come before it. For instance, in *Chapman* v. *Railroad Company*, supra, the court held that the property destroyed by fire had no established location, that it was deposited and removed with such facility as to render insurance impracticable and unavailable, and that consequently it was not within the meaning of the statute. In *Lowney* v. *Railway Company*, 78 Maine, 479, the decision of the court, that the company was not liable, was based upon the fact that the property destroyed consisted of movable articles, temporarily placed near the railroad track as in the case of *Chapman* v. *Railroad Company*.

But in *Stearns* v. *Railroad Company*, 46 Maine, 95, to recover damages for the destruction of a chair factory, the machinery and tools therein and chairs wholly or partially manufactured, together with stock used in their manufacture; in *Bean* v. *Railroad Company*, 63 Maine, 294, to recover for the destruction of a stock of goods in a store occupied by the plaintiff near the railroad track; and in *Thatcher* v. *Railroad Company*, 85 Maine, 502, to recover for the destruction of a quantity of lumber stored upon a piling ground near the defendant's track, which had been used by the plaintiff for the same purpose for a number of years in connection with his mill, with the knowledge of the defendant company which had built side tracks to facilitate the shipping of lumber from the piling place, this court held that in each of these cases the railroad company was liable.

The distinction between these two classes of cases is well marked; they are all decided upon the construction of the statute laid down by the court in the first case in which it was considered, that is, that the liability of the company should be co-extensive only with its practical opportunity to insure the property along its route for which it might be liable. For the company to be liable there must be such elements of permanency in the situation of the property that the railroad company may protect itself against its

liability, by insurance. Upon this principle a railroad company is not liable for the destruction of property, under the statute, temporarily located along its route and which may be so soon and so easily moved that the company cannot, by the exercise of reasonable diligence, protect itself against liability by insurance; but the company is liable under the statute for merchandise, lumber or other chattels regularly and permanently located along its route.

It is, of course, unnecessary in any of these cases that the identical articles should remain situated along the route for any particular length of time; these may be constantly changing as do the various articles in a stock of goods, while the stock itself, replenished from time to time, remains permanently in the place designed for it. The permanency here referred to means the permanent use of the particular place for the same kind of articles or goods. We think that the character of this property belonging to the plaintiff, and the long continued use that he had made of this storehouse, and its immediate vicinity, for the purpose of storing there his ship-knees, continuously since 1882, clearly bring the case within the meaning of the statute.

For the purpose of proving the number and sizes of the knees destroyed, the plaintiff testified that on the 12th and 13th days of May, a few days before the fire, he took an account of the same, in the first instance making his memoranda upon a shingle, the result of which he later, on the afternoon of the 13th, transferred to a small memorandum book. In answering a question as to the number and sizes of the knees that he had taken an account of, he referred to this memorandum book, when the counsel for the defense objected to such reference, giving as a reason that: " This book is not a book of original entry." The court overruled the objection and allowed the witness to refer to this book for the purpose of refreshing his recollection. The absence of the shingle upon which the original memoranda were made was unaccounted for. To this ruling the defendant excepted.

Objection is now made because the witness after referring to his memoranda had no independent recollection of the fact that he testified to. But this did not appear to be the case at the time

and objection was not made at the time for this reason. The justice presiding only ruled that the witness might refer to his book containing memoranda, made at the close of his stock taking, to refresh his recollection and the objection was that he should not be allowed to look at the book even for that purpose because it was not the book of original entry. For this purpose it was not necessary that the writing should have been an original one.

But even if the objection now urged had been made at the time, we think that it would have been unavailing. A witness may be allowed to assist his memory by referring to writings, "where the witness recollects having seen the writing before, and though he has now no independent recollection of the facts mentioned in it, yet he remembers that, at the time he saw it, he knew the contents to be correct." 1 Greenleaf on Evidence, § 437.

When the testimony relates to dates, figures, amounts or quantities, which can be retained in the memory, with difficulty if at all, this rule is, we believe, a necessary and wise one, and is productive of more good than harm. The rule as above stated is quoted in full and with approval in *Dugan* v. *Mahoney*, 11 Allen, 572.

The only question raised by the defendant's motion for a new trial is as to the amount of damages assessed by the jury, as this was the only question submitted to the jury. But this ground for a new trial is not urged by the defendant's counsel in argument, and we think that the amount of the damages assessed was authorized by the evidence.

*Motion and exceptions overruled.*