E. L. CLEVELAND COMPANY

*vs.*

BANGOR AND AROOSTOOK RAILROAD COMPANY.

Aroostook.　　Opinion, July 19, 1934.

*J. F. Burns*, for plaintiff.
*Henry J. Hart*,
*Frank P. Ayer*,
*James C. Madigan*,
*Cook, Hutchinson, Pierce & Connell*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.   "Law" on brief statement of facts.

Under a written permit from the defendant Company dated July 12, 1932, the plaintiff maintained a potato warehouse "on land of the defendant but not used by it in the operation of its railroad." On May 18, 1933, this warehouse with its contents was destroyed by fire, communicated to it from the defendant's locomotive.

This action to recover fire loss is based on Section 63 of Chapter 64, R. S. 1930, which provides:

"When a building or other property is injured by fire communicated by a locomotive engine the corporation using it is responsible for such injury, and it has an insurable interest in the property along the route, for which it is responsible, and may procure insurance thereon. . . ."

The sole defense claimed is the fire release in the permit which is couched in these words:

"The contractor" (meaning the plaintiff) "hereby assumes all risk of loss or damage to said building, or property stored therein . . . occasioned by fire, whether communicated directly or indirectly from locomotives, or in or by the operation of said railroad, or otherwise, and all damage caused by fire, for which the Company would but for this agreement be liable, so that neither said Contractor nor any person claiming under the Contractor shall have or make any claim against the Company for damages to such property caused by fire communicated as aforesaid, or otherwise, . . ."

The plaintiff contends that this provision of the permit is invalid, because, (1) it violates the statute above quoted, and, (2) is against public policy.

The statute itself is not attacked as unconstitutional. In *St. Louis & San Francisco Railway* v. *Mathews*, 165 U. S., 1, Justice Gray, speaking of our Maine statute, after remarking that it was enacted in 1842, said its "validity" had been "upheld" by our highest court, citing *Chapman* v. *Atlantic & St. Lawrence R. R.*, 37 Me., 92; *Pratt* v. *Same*, 42 Me., 579; *Stearns* v. *Same*, 46 Me., 95; *Sherman* v. *Maine Central Railroad*, 86 Me., 422, 30 A., 69. Similar statutes have been held constitutional by United States Courts. *St. Louis & San Francisco Ry.* v. *Mathews*, supra; *Atchison, Topeka & Santa Fe R. R.* v. *Matthews*, 174 U. S., 96; *Aetna Insurance Co.* v. *Chicago, Great Western R. R.*, 180 N. W., 649.

The sole issue in this case is whether or not this release is legal. It is not invalid because of the statute. Neither by express language nor by implication does it forbid such a release, although its language is broad enough to release from liability on account of a fire occasioned through negligence.

"This language is general and comprehensive and if read literally it includes all cases of fire communicated by locomotive engines, whether by reason of negligence or not."
—*Farren* v. *Railroad Company*, 112 Me., 81, 83.

The purpose of the statute was to create a right of action where, except by early English common law, afterwards abrogated by 6 Ann, Chap. 31 (*Farren* v. *Railroad Co.*, supra), there was none unless negligence could be shown. Section 63 aforesaid, while giving a remedy, does not compel its adoption. In spite of the statute, there can be no doubt that one whose property has been destroyed by fire can lawfully refrain from prosecution of his rights, and in the absence of such prosecution, the railroad company can fail to pay without violation of law. We see in the statute no implication that would prevent the giving of such a release in a contract before the loss.

It should now be noted, however, that the fire in this case is not shown by the agreed statement to have been of negligent origin. We can not assume any negligence upon the part of the defendant. If not negligent, the cause of the fire was accidental. We can not conceive of any reason why a contract can not legally include such a provision as to fire accidentally communicated.

But even if the permit contemplates a release of fire negligently communicated, it is still valid in this case.

"Contracts exempting a railroad company from liability for damages to buildings on its right of way from fire caused by its negligence are not invalidated by laws making carriers liable for damages irrespective of negligence."—51 C. J., 1185, Sec. 1314; *Griswold* v. *Illinois Central Railroad Co.*, 90 Iowa, 265, 57 N. W., 843, 24 L. R. A., 647; *Manchester Marble Company* v. *Rutland Railroad Co.*, 100 Vt., 232, 136 A., 394.

"Such contracts are not in violation of a constitutional provision that 'no common carrier shall be permitted to contract for relief from its common law liabilities.'"—51 C. J., 1185, Sec. 1314; *Greenwich Ins. Co.* v. *Louisville, etc., R. Co.*, 112 Ky., 598, 66 S. W., 411, 56 L. R. A., 477.

The stipulation of facts in this case does not state definitely whether this warehouse was on the railroad right of way or off from it. We think we are justified, however, from the arguments made, in inferring that if not located on the right of way, it was in close proximity thereto. Certainly it was within the reach of loco-

motive sparks. While it is true that some cases have distinguished in the application of the law as to whether the property destroyed is on or off the right of way (see distinction mentioned in *Manchester Marble Co.* v. *Rutland Railroad Co.*, supra,) yet the cases generally hold "that contracts, in consideration of some privilege or concession granted by a railroad company which it would not otherwise be bound to extend, exempting it from liability for the destruction even of buildings not on its right of way, are valid and enforceable."—See Annotation in 48 A. L. R., page 1003, supported by citations of many cases therein.

Furthermore, although the defendant was, at the time of the making of the contract, a common carrier, yet it was not one for carriage of either persons or property, nor pertained to performance of its duties as a carrier or a public utility. *Bartee Tie Co.* v. *Jackson*, 117 N. E. (Ill.) 1007, (holding that the leasing of land by a railroad company to a private corporation for the purpose of storing cross ties is not a lease of a public utility.)

> "While a railroad company may not contract for exemption wholly or partially from liability for damages caused by fire in derogation of its duty to the public as common carrier, in its private capacity as owner of property it may, by a valid contract, be relieved from liability for damages by fire caused by its negligence."—51 C. J., page 1183.

While we find no Maine case in support of the above statement of the law, yet it is overwhelmingly sustained by decisions in Federal as well as State Courts. Perhaps the leading case is *Griswold* v. *Illinois Central Railroad Company*, supra, in which the decision is based on the theory that the company enters into such a contract in its private capacity in which it owes no duty to the public to exercise care. The Court said:

> "It is undoubtedly true that the ultimate purpose of the defendant in entering into this contract was the promotion of its business as a common carrier. But the contract is not for the carriage of persons or property. That the ultimate purpose was to increase its business as a carrier does not make this a contract for carriage any more than would be the employ-

ment of workmen in its shops, warehouses, or elsewhere apart from the operation of the road."

The cases so holding are so numerous that we will not attempt to enumerate them. They may be found collected in Foot Notes 20 and 21, 51 C. J., on page 1184; also in annotations in 44 L. R. A., page 1127; 48 A. L. R. Ann. 1003; 51 A. L. R. Ann. 638.

We quote from one of the best reasoned opinions among them, namely *Hartford Ins. Co.* v. *Chicago, Milwaukee & St. Paul Ry.*, 175 U. S., 91, in which Justice Gray said, at pages 97 and 98:

"It is settled by the decisions of this Court that a provision, in a contract between a railroad corporation and the owner of goods received by it as a common carrier, that it shall not be liable to him for any loss or injury of the goods by the negligence of itself or its servants, is contrary to public policy and must be held to be void in the courts of the United States, without regard to the decisions of the courts of the State in which the question arises. But the reasons on which these decisions are founded are, that such a question is one of the general mercantile law; that the liability of a common carrier is created by the common law, and not by contract; that to use due care and diligence in carrying goods entrusted to him is an essential duty of his employment, which he can not throw off; that a common carrier is under an obligation to the public to carry all goods offered to be carried, within the scope and capacity of the business which he has held himself out to the public as doing; and that, in making said contracts for the carriage of such goods, the carrier and the customer do not stand on equal terms."

In that case, the property involved was a warehouse standing on railroad property by the side of its track. The Court said:

"But it" (meaning the railroad) "is not obliged, and can not even be compelled by statute, against its will, to permit private persons or partnerships to erect and maintain elevators, warehouses or similar structures, for their own benefit, upon the land of the railroad company. *Missouri Pacific Railroad Co.* v. *Nebraska*, 164 U. S., 403. . . .

"The principal consideration, expressed in their contract, for the license to build and maintain the warehouse on this strip of land, was the stipulation exempting the railroad company from liability to the licensee for any such damages. And the public had no interest in the question which of the parties to the contract should be ultimately responsible for said damages to property placed on the land of the corporation by its consent only."

And so the United States Court held the fire release valid.

"The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence 'seeks to put off two essential duties of his employment.' It is recognized that the carrier and the individual customer are not on an equal footing. 'The latter can not afford to higgle or stand out and seek redress in the courts. . . . He prefers, rather, to accept any bill of lading, or sign any paper that the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases, he has no alternative but to do this, or abandon his business.' *Railroad Company* v. *Lockwood*, supra, pages 378, 379. For these reasons, the common carrier in the transaction of its business as such is not permitted to drop its character and transmute itself by contract into a mere bailee with right of stipulation against the consequences of its negligence.

"Manifestly, this rule has no application when a railroad company is acting outside the performance of its duty as a common carrier. In such case, it is dealing with matters involving ordinary considerations of contractual relation; those who choose to enter into engagements with it are not at a disadvantage; and its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it. It is apparent that there may be special engagements which are not embraced within its duty as a common carrier although their performance may incidentally involve the trans-

portation of persons or things, whose carriage in other circumstances might be within its public obligation."—*Santa Fe R. R.* v. *Grant Brothers,* 228 U. S., pages 184 and 185.

The defendant, then, in the making of this contract, was acting in its private capacity and in so doing had in full the rights of an individual; and as an individual landlord could lawfully enter into such an agreement with his tenant, so a railroad company, though a public carrier, can in a contract not involving public carriage, take a valid release of liability for destruction by fire of the leased property, whether the same be on its right of way or not, if it be "along the route" and the words of the statute "along the route" "describe buildings being near and adjacent to the route of the railroad so as to be exposed to the danger of fire from engines but without limiting or defining the distance."—*Pratt* v. *Atlantic & St. Lawrence R. R. Co.,* 42 Me., 583; *Martin* v. *Grand Trunk Railway Co.,* 87 Me., 411, 32 A., 976; *Pierce* v. *Bangor & Aroostook Railway Co.,* 94 Me., 171, 47 A., 144.

Such an agreement not only does not offend the statute but is not contrary to public policy.

"Agreements are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy or they manifestly tend to injure the public in some way."—13 C. J., 427, and cases cited in Foot Note 51.

In these days when it would almost seem as though some courts sanction the breach of plainly stated lawful contracts, it is with real satisfaction that we quote the following language from a United States Court decision of former days not only as pertinent but as safe and sound law:

"At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. . . . Public

policy requires that men of full age and competent under-standing shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice."—*Baltimore & Ohio R. R. Co.* v. *Voigt,* 176 U. S., 505, 506.

Our decision, then, is that this fire release constitutes a complete defense to this action and so, as stipulated, the entry must be,

*Judgment for the defendant.*