BANGOR & AROOSTOOK RAILROAD COMPANY *vs.* WARD C. HAND.

Aroostook.      Opinion, August 10, 1934.

*Henry J. Hart,*
*Frank P. Ayer,*
*Cook, Hutchinson, Pierce & Connell,*
*James C. Madigan,* for plaintiff.
*J. F. Burns,* for defendant.

SITTING: PATTANGALL, C. J. DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

PATTANGALL, C. J.   This case comes forward on an agreed statement of facts. Plaintiff granted permission to defendant to erect and maintain a warehouse on land owned by it, in which defendant stored merchandise owned by other parties. The warehouse and its contents, consisting of potatoes valued at $150 and fertilizer valued at $2,016.25, were destroyed by fire communicated from a locomotive operated by plaintiff.

In the absence of any contract between plaintiff and defendant, plaintiff was liable for the amounts stated, by reason of Sec. 63, Chap. 64, R. S. 1930, which in part provides that "When a building or other property is injured by fire communicated by a locomotive engine the corporation using it is responsible for such injury."

But the permission given to defendant to occupy plaintiff's land contained the following clause:

"The Contractor hereby assumes all risk of loss or damage to said building, or to property stored therein, and to all property owned by the Contractor, including property loaded in cars, in the vicinity of the same, occasioned by fire, whether communicated directly or indirectly from locomotives, or in or by the operation of said railroad, or otherwise, and all damage caused by fire, for which the Company would but for this agreement be liable, so that neither said Contractor nor any person claiming under the Contractor shall have or

make any claim against the Company for damages to such property caused by fire communicated as aforesaid, or otherwise, and further agrees to protect and save harmless the Company from all liability for damage by fire which in the operation of its railroad or from cars or engines on its road, or otherwise, may be communicated directly or indirectly to the building on said described premises, or to any property therein, whether owned by the Contractor or by any other person or persons whomsoever, or to any property loaded in cars by or for the Contractor in the vicinity thereof, and to any suit against the Company, its successors and assigns, brought to obtain damages caused by fire as aforesaid, this agreement may be pleaded in bar and shall be taken to be and shall be a full and complete defense."

The owner of the potatoes which were burned brought suit against plaintiff and recovered judgment, including costs, for $166.67. Defendant was notified to defend but declined to appear. Later the owner of the fertilizer asserted its claim and, defendant having agreed that the damage involved amounted to $2,016.25, plaintiff paid that sum and called upon defendant to reimburse it therefor.

Defendant denied liability on two grounds, asserting that the contract between him and plaintiff was void; first, because in violation of the provisions of the statute quoted and against public policy and, second, because it contained the following clause:

"This lease cannot be transferred, nor may the buildings constructed or erected on the premises be sold or sublet, in whole or in part, *without the written consent* of the Company, and no consent to any transfer, sale or sublease will be given by the Company unless and until the purchaser or the sublessee shall have agreed in writing to be bound by all the provisions of this agreement with respect to use and care of the premises and the buildings, to liability of the Company and to indemnification of the Company."

and no written consent to the subletting of the storehouse to the owners of the potatoes and fertilizer was given by plaintiff.

The first point raised need not be considered here. It has very recently been fully discussed and decided in *Cleveland* v. *B. & A. R. R. Co.*, 133 Me., 62, 173 A., 813.

There is no merit in the second point. Whether defendant sublet a portion of the premises without the knowledge of plaintiff or, having knowledge, plaintiff waived the formality of consent in writing, is not apparent on the record but in either event defendant was not prejudiced. No advantage was gained by either party and no disadvantage suffered by reason of failure on defendant's part to procure plaintiff's written consent to sublet. Apparently this defense was not seriously urged as the agreed statement closed with the following stipulation:

> "The only question being whether or not the defendant's indemnity contract is valid, the case was submitted to this Court on an agreed statement, the parties stipulating that if the Law Court holds the defendant liable, judgment shall be entered for the plaintiff in the sum of $2,182.92 and interest from the date of the writ, together with costs, otherwise judgment shall be for the defendant."

Notwithstanding this stipulation, however, defendant argued in his brief and orally that even though the indemnity contract was held to be valid, he was not liable for the damage occasioned by the destruction of the fertilizer, claiming that the property was only temporarily stored in the warehouse and invoked the rule, laid down in *Chapman* v. *R. R. Co.*, 37 Me., 92, "that the liability of railroad corporations under the statute extends only to property permanently existing along their route and capable of being insured and that as to movable property, having no permanent location, the liability of such corporation is to be determined by the principles of the common law." Plaintiff's counsel, on this point, waived his rights under the stipulation quoted above and generously agreed that this defense might be considered, although denying that it had application here.

*Chapman* v. *R. R.*, supra, was affirmed in *Lowney* v. *Railway Co.*, 78 Me., 479, 7. A., 381, and fully discussed and considered by this Court in several other cases, the more important of which are *Thatcher* v. *R. R. Co.*, 85 Me., 502, 27 A., 519, and *Pierce* v. *R. R.*

*Co.*, 94 Me., 171, 47 A., 144, 146. These cases sustain the doctrine of the earlier case, notwithstanding the fact that similar statutes were construed in *Hart* v. *R. R. Co.*, 13 Met., 99; *Bassett* v. *R. R. Co.*, 145 Mass., 129, 13 N. E., 370; *Hooksett* v. *R. R. Co.*, 38 N. H., 244; *Cleveland* v. *R. R. Co.*, 42 Vt., 449, and *Grand Trunk Railway Co.* v. *Richardson*, 91 U. S., 454, to include all property along the route of the railroad whether there temporarily or permanently.

The position taken by the Maine Court is that the liability of the railroad company is co-extensive with the right given to the company, by the same statute, to insure the property and that, therefore, there must be such elements of permanency in the situation of the property as to give reasonable opportunity to procure insurance.

In *Bean* v. *R. R. Co.*, 63 Me., 294, plaintiff recovered for a stock of goods in a store near the railroad track; in *Thatcher* v. *R. R. Co.*, supra, for lumber piled in a mill yard; and in *Pierce* v. *R. R. Co.*, supra, for a quantity of ship knees piled along the track. The line of demarcation drawn between those cases in which liability was found and those in which it was denied, where personal property was destroyed by fire communicated from a locomotive, is clearly stated in the last mentioned case in the following language:

"The distinction between these two classes of cases is well marked; they are all decided upon the construction of the statute laid down by the court in the first case in which it was considered, that is, that the liability of the company should be co-extensive only with its practical opportunity to insure the property along its route for which it might be liable. For the company to be liable there must be such elements of permanency in the situation of the property that the railroad company may protect itself against its liability, by insurance. Upon this principle a railroad company is not liable for the destruction of property, under the statute, temporarily located along its route and which may be so soon and so easily moved that the company cannot, by the exercise of reasonable diligence, protect itself against liability by insurance; but the company is liable under the statute for merchandise, lum-

ber or other chattels regularly and permanently located along its route.

"It is, of course, unnecessary in any of these cases that the identical articles should remain situated along the route for any particular length of time; these may be constantly changing as do the various articles in a stock of goods, while the stock itself, replenished from time to time, remains permanently in the place designed for it. The permanency here referred to means the permanent use of the particular place for the same kind of articles or goods."

Applying the rule to the instant case, it would seem clear that plaintiff might readily have insured the contents of the warehouse and included fertilizer as well as potatoes had it desired to do so. It is immaterial when the particular property burned was placed in the warehouse. The building was used as a storage place for merchandise and its contents could have been insured as such by plaintiff or defendant. Very naturally, having by its contract with defendant eliminated any possibility of financial loss in case of fire, plaintiff did not deem it necessary to incur the expense of insuring.

*Judgment for plaintiff for amount stipulated.*