ALBERT DENACO *vs.* EDWIN BLANCHE
CARLOS PITCHER *vs.* EDWIN BLANCHE
WILLIAM MAYO *vs.* EDWIN BLANCHE

Kennebec. Opinion July 14, 1952.

*Fogg & Fogg, Goodspeed & Goodspeed,* for plaintiff.

*Robinson, Richardson & Leddy; McLean, Southard & Hunt,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J. The actions here under review, on defendant's exceptions, were brought to recover damages sustained by the plaintiffs, as the declarations allege, as a result of the negligence of the defendant, when a motor-driven bush-cutting machine he was driving, from the place where he had been engaged in operating it, to a garage for repairs, went out of control. He was an employee of the State Highway Commission, referred to hereafter as the "Commission." The plaintiffs, employees of W. H. Hinman, Inc., an assenting employer under The Workmen's Compensation Act, R. S. 1944, Chap. 26, referred to hereafter as the "Act," being injured thereby while doing road construction work under a contract between the Commission and their employer, received the compensation and medical benefits to which they were entitled thereunder from that employer, a self-insurer under the Act.

The employer brought the actions in the names of the plaintiffs, as authorized by Section 25 of the Act. The Justice in the Trial Court, acting without the intervention of a jury, and with the right of exceptions on questions of law reserved, awarded recoveries substantially in excess of the compensation and benefits applicable to each plaintiff. Under the Act each is entitled to such part of the award made to him as represents the excess over the employer's payments, expenses and costs of action or collection. Defendant's claim that the plaintiffs are nominal parties and that their employer is the real plaintiff, to use the designations applied in *Fournier* v. *Great Atlantic & Pacific Tea Co.*, 128 Me. 393, 148 A. 147, 68 A.L.R. 481, has no bearing on the single issue presented by the Bills of Exceptions.

That issue, raised in brief statements accompanying the pleas of the general issue filed in the cases, which we con-

sider alleged sufficiently in the Bills of Exceptions, despite plaintiffs' challenge thereof, noted hereafter, is grounded on defendant's status as an employee of the Commission and the undertaking of the employer of the plaintiffs in its contract with said Commission to assume certain risks; to defend certain actions; and to indemnify the State and the Commission, their officers and agents, and save it, and them, harmless, from any and all claims in a field wherein, the defendant asserts, the present actions fall. If the employer's contract requires it to save the State and the Commission harmless against any claims where recoveries are based upon the negligence of any employee of the Commission, regardless of the nature of the work on which he was employed when it occurred, it would be true, as the brief statement alleges, that the recoveries of the plaintiffs would be collectible from their employer by the Commission, assuming it to be holden to pay them in the first instance, and the result would be, as the defendant alleges, "a circuity of actions and a multiplicity of suits."

A consideration that could not be overlooked, if we thought that the defendant had any reasonable basis for the claim he asserts, is the Act under which the plaintiffs' employer is proceeding. Its purpose and its operation have been declared on so many occasions heretofore that there can be no necessity for saying more at this time than that it assures the employees of assenting employers moderate recoveries from their employers by the waiver of their rights of action at common law against those employers and that such waiver does not involve any benefit to third persons responsible for injuries to them. The waiver is declared in Section 7 of the Act (where employees take no action to preserve the right in question), and full recognition of their right to supplement the compensation and benefits they receive by full recovery from negligent third persons is carried in Section 25. We have no occasion at this time to consider how the right of an employer to satisfy the

claims of his employees under the Act would be affected by a contract in which he undertook definitely to relieve third persons negligently injuring his employees from common law liability therefor. The present contract, as we read it, does not purport to reach so far.

Reference to it makes it apparent that there is no suggestion of basis for the claim asserted by the defendant. The pertinent part thereof reads:

> "The Contractor shall assume the defense of, and indemnify and save harmless the State and the Commission and their officers and agents from all claims, suits or actions of any character, name and description on account of injuries to any person, persons, property, firm or corporation, received or sustained by or from the Contractor and his employees in doing the work, or in consequence of any improper materials, implements or labor, used therein; and for any act, omission or neglect of the Contractor and his employees therein."

The quoted language is the first of two paragraphs appearing under the caption "Responsibility for Damage Claims" in a printed book of 263 pages carrying the "Standard Specifications" of the Commission, which became part and parcel of every contract for highway work at or near the time that of the employer was executed. The defendant relies on the first part of it. Counsel for the plaintiffs argues, quite properly, that everything which appears under the caption should be considered in determining the intention evidenced by any particular part, and it is undoubted that what follows the quoted paragraph demonstrates clearly that the intention of the whole was to cover fully whatever might happen in the course of the work to which the contract related, and nothing beyond that point. It is not necessary, however, to go outside the very language on which the defendant relies. The injuries for which the employer undertook to be responsible were those:

"received or sustained *by or from* the Contractor
and his employees *in doing the work*" (emphasis
supplied).

Counsel for the defendant places his reliance on the word
"by," asserting that the use thereof makes the employer's
agreement all-inclusive so far as any injury to its employees
is concerned, and is entirely clear and free from ambiguity.
He reads the word "in" in the phrase "in doing the work"
as if it were intended to mean "while" and "in."

Such a construction is obviously a very forced one and
would have to be considered so if all that appears after the
phrase "in doing the work" could be disregarded. The lan-
guage following it, however, and the long paragraph which
completes the agreement concerning responsibility, makes it
undoubted that the intended coverage was limited to the
contract work. The employer, as an assenting employer un-
der the Act, was liable, to any employee, for compensation
and benefits applicable to injuries suffered by him, arising
out of and in the course of his employment, and, as a prin-
cipal or master, to any person other than an employee who
was injured through the negligence of one, within the course
of his work. The purpose of the quoted language was to
protect the State and the Commission from claims of these
two classes, and no others. The possibility that some em-
ployee of the Commission, engaged to do work of some other
kind in some other location, would injure one of the con-
tractor's employees while driving a motor vehicle in the
vicinity where they were working was not within the con-
templation of the parties to the contract.

It is unnecessary in this case to consider what language
of a contract, if any, will indicate the intention of an in-
demnitor to protect an indemnitee against liability for neg-
ligence wherever it may occur, or the public policy which
would be involved if such a contract purported to be so all-
inclusive. That public policy does not preclude contracts

carrying an agreement of indemnity against negligence in a limited field is apparent by reference to *E. L. Cleveland Co. v. Bangor and Aroostook Railroad Co.,* 133 Me. 62, 173 A. 813, and cases cited therein, and the long annotation following the report of *Griffiths* v. *Broderick,* 27 Wash. 2d. 901, 182 P. 2d. 18, 175 A.L.R. 1, in the last cited report thereof. That annotation considers two types of indemnity contracts, those where:

> "one party agrees not to hold the other liable for damages which the former may suffer due to the negligent act of the latter, or one party agrees to indemnify a second for any liability incurred to a third party by reason of the negligence of the second."

The *Cleveland* and *Griffiths* cases, *supra,* are typical examples of agreements of the first class, the intention that they should protect the indemnitees against claims of a certain kind originating in negligence being made apparent by the references to fires "communicated directly or indirectly" from locomotives, in the one case, and to injuries "arising from any cause," on particular premises, in the other. The present contract falls in the second class. We are aware of no case, which indicates that the defense has not cited us to one, where anyone has ever attempted to contract himself out of liability for negligence wherever and whenever it might occur. Had the defendant been operating the bush-cutting machine in connection with the work the plaintiffs' employer had contracted to do, the defendant's claim might be supportable. He was not. That machine was not in use "in doing the work" to which the contract related, or with which it was in any way connected. The contract imposes no burden on the employer outside that field.

The plaintiffs claim that the exceptions presented by the defendant do not raise any issue "in clear and specific phrasing" or identify "clearly" the ruling of law intended

to be challenged within the principle declared in *Dodge* v. *Bardsley*, 132 Me. 230, 169 A. 306, and cases cited therein, must be rejected. The claim is based on the fact that the defendant did not ask a definite ruling in the Trial Court on the validity of his asserted equitable defense to lay the groundwork for an exception pointing directly to it. The cases were submitted to the Justice for decision of "all issues of fact, law, and equity involved, relating to both the legal and equitable defenses pleaded." The Bills of Exceptions present no challenge of the factual findings necessarily included in the damage awards. They set out carefully the employment status of the parties, quote what the defendant asserts is the controlling language of the contract, and make it apparent that sole reliance is placed on the equitable defense asserted in the brief statements. Careful reading of the Bills makes it obvious, as counsel for the defendant states in his brief, that they are "directed solely toward the equitable defense." Counsel concedes that the factual decisions on negligence and damages are final. The ruling on the equitable defense was correct.

*Exceptions overruled.*